73 So.2d 66 (1954)
CHASTAIN
v.
CHASTAIN.
Supreme Court of Florida. Special Division B.
May 25, 1954.
Rehearing Denied June 10, 1954.
*67 Wideman, Caldwell, Pacetti & Robinson and Paty, Downey & Paty, West Palm Beach, for petitioner.
Burns Middleton & Rogers, West Palm Beach, for respondent.
MATHEWS, Justice.
This is a certiorari proceeding to review an order of the Chancellor modifying a final decree awarding alimony to the petitioner in a divorce suit.
The final decree of divorce awarding alimony was entered on September 17, 1952. In that final decree the Chancellor found that the petitioner here was entitled to alimony and that the respondent was a man of substantial means. He was the owner of one of the finest cattle ranches in the country composed of about 31,500 acres of land of a market value of approximately $1,500,000 which did not include a herd of approximately 2,100 herd of cattle and other assets worth approximately $107,000, with total liabilities of approximately $70,000. The Chancellor awarded to the petitioner in that final decree $700 per month as alimony and in addition thereto he awarded to her a residence, stating as follows:
"* * * She should have the Hi Mount residence. She might well rent it during the season and gain a net of several thousand dollars. She should have a place so that a home can be provided for the boy, when he lives with her. Though the maintenance costs of this home will be high, that can be offset by this added income which she might receive, should she retain the property and rent part or all of it."
In the order modifying the final decree, the Chancellor stated:
"* * * If the alimony payments should be reduced one-half  that is to $4200.00 a year  this would leave the plaintiff with a gross income of between $9,000.00 and $10,000.00 a year, in the event she is able to continue to rent her home. * * *"
In the final decree, with reference to alimony, the Chancellor found:
"* * * The defendant is a man of substantial means. To determine his ability, one must consider the nature of his capital assets, as well as his income. He is quite able to provide for her in the station of life to which these parties have been accustomed to live during recent years, and he is willing to do so."
*68 The record shows that the respondent testified prior to the final decree of divorce that he was then operating the ranch at a loss. It is therefore apparent that income was not the controlling factor in fixing the amount of alimony but that it was fixed upon that statement of the Chancellor, "To determine his ability, one must consider the nature of his capital assets, as well as his income."
There was no appeal from the final decree of divorce awarding alimony and the time for appeal has long since expired. The needs, abilities and faculties of the parties were settled in that final decree and are now res adjudicata, except that of modifying the decree as to alimony in accordance with the public policy of the State as it existed and as it is now declared to be by F.S. § 65.15, F.S.A.
As was stated by Mr. Justice Terrell in the case of Schiff v. Schiff, Fla., 54 So.2d 36, the Chancellor may on examination of the husband's sources of income modify alimony decrees "if there is a strong showing that the husband's ability to pay has depreciated." A final decree of divorce awarding alimony should not be modified as to alimony without a strong showing that the husband's ability to pay has depreciated. The burden is upon the complaining party to make this strong showing. Income alone is not necessarily the test in determining ability to pay. As pointed out by the Chancellor in the final decree awarding divorce and fixing alimony, "one must consider the nature of his capital assets, as well as his income".
It may be that a man having capital assets worth more than $1,500,000 would have no net income. In this case, at the time of the entry of the final decree of divorce awarding alimony, the testimony of the respondent was that he was operating at a loss. Notwithstanding the fact that he was operating at a loss, the Chancellor found that he was able to pay and should pay the sum of $700 per month.
The Chancellor evidently based his order of modification upon the fact that if she continued to rent the home, she would have a gross income of between $9,000 and $10,000 per year, if the alimony payments should be reduced one-half. This fact was known at the time of the entry of the final decree of divorce and was recognized by the Chancellor when he said: "She might well rent it [the house] during the season and gain a net of several thousand dollars."
At the time of the hearing on the petition for modification, the necessity and ability of the wife had not changed. According to the report of an auditor, which was prepared for tax purposes, and considering depreciation, the ranch was being operated at a loss not materially different from that which existed at the time of the entry of the final decree of divorce. The respondent owned the same property and his liabilities had increased approximately $10,000. He actually had more cattle than he had at the time of the entry of the final decree of divorce. He failed to meet the burden resting upon him to prove that it was beyond his capacity or ability to make the payments required by the final decree. See Fleischer v. Fleischer, 149 Fla. 621, 6 So.2d 836.
An order modifying a final decree as to alimony should be made based upon a clear and strong showing with regard to changed circumstances and the financial ability of the husband to pay. The showing in this record is that the husband has the financial ability to pay and there have been no changed circumstances which would justify a modification of the final decree.
It is quite evident that the order modifying the final decree was based upon a wrong theory of law, that economic conditions, principally, a decrease in the market value of cattle which caused a decline in the income of respondent was sufficient to show the inability of the respondent to pay the alimony awarded in the final decree. As heretofore pointed out, income alone is not necessarily the basis upon which an award of alimony may be fixed. A change in economic conditions or the *69 market value of cattle is not the proper basis to modify the final decree in this case. There is no showing that economic conditions were of a permanent nature. At most it may be said that the record shows a fluctuation in the price of marketable cattle, but such showing is not sufficient to justify a modification of the award of alimony. It may be true that the husband may be operating a business worth more than $1,500,000 at a loss due to temporary market conditions but this would not show or prove his incapacity to make the alimony payments required by the final decree. There is nothing in the record to show that the respondent does not have the capacity to meet the alimony award of $700 per month.
The writ of certiorari be and the same is hereby granted and the order entered on February 25, 1954, be and the same is hereby quashed and set aside.
It is so ordered.
ROBERTS, C.J., and HOBSON and DREW, JJ., concur.