126 So.2d 890 (1961)
James TERRY, Appellant-Cross-Appellee,
v.
Gertrude S. TERRY, Appellee-Cross-Appellant.
No. 1767.
District Court of Appeal of Florida. Second District.
February 17, 1961.
S. Robert Zimmerman, Pompano Beach, for appellant.
John T. Carlon, Jr., Coker & Carlon, Fort Lauderdale, for appellee.
ALLEN, Chief Judge.
The appellee, as plaintiff in the lower court, filed an action on May 7, 1958, for alimony and separate maintenance unconnected with grounds for divorce, alleging that the parties have been married since 1946 and that extreme cruelty rendered the separation necessary. After a hearing, the wife was granted $250 per month temporary alimony. The plaintiff thereafter amended her complaint and requested a divorce from defendant. On February 12, 1959, a final decree was entered granting plaintiff a divorce, and a property settlement agreed to by the parties was incorporated into the decree. No appeal was taken from this decree. On December 17, 1959, a petition for increase of alimony was filed by the *891 plaintiff. After a hearing on this petition a final decree was entered on February 11, 1960, increasing alimony from $375 per month, which was awarded in the agreement, to $425 per month but denied plaintiff's request for attorney's fees. It is from this last order that the present appeal and cross-appeal have been taken.
The parties were married on January 26, 1946, and lived together until April 15, 1958, at which time they separated. Up until 1955, the defendant was an official with Ford Motor Company and was paid a salary of $34,858.61 in 1955. He opened his own business as a local Ford dealer in Pompano Beach in 1956, and apparently was no longer employed by the Ford Motor Company. At the hearing on plaintiff's original complaint it was established that for 1958 the defendant's income would be $7,200 salary from his dealership plus a deferred bonus from his prior job of $4,300. It was upon this salary basis that the $250 per month separate maintenance was awarded. At that hearing the wife testified by deposition that her expenses were $304 per month.
The separation agreement entered into by the parties and which was incorporated into the final decree of divorce, provided for the payment by defendant to plaintiff the sum of $375 per month until either she remarried or the agreement was modified by court order.
The defendant's dealership is incorporated with a net worth as of May, 1958, of $38,628. The corporation was set up in 1956 at which time an $80,000 mortgage on the business was executed to Atlantic Federal Savings & Loan Association. The land on which the business is located is leased by the corporation with an option to purchase in 1966 for $120,000. The total value of buildings and improvements was $138,000 which is being depreciated at the rate of 10% per year. In 1958 the corporation showed a net income of $10,651 after depreciation, taxes and expenses.
During 1959 the defendant received a salary of $12,000 from his corporation and, according to estimates at the time of the hearing on plaintiff's petition to increase the alimony, the corporation would have a net earning of $29,341 as of the end of 1959.
Also during 1959 the defendant withdrew the following sums for the specified purposes:

 1. Divorce expenses $10,000
 (Attorney's fees-alimony)
 2. Reduction of note to 3,000
 Vice-Pres. Hadart
 3. Reduction of note to 3,000
 Universal C.I.T.
 4. Reduction of mortgage 6,000
 on business
 5. Down payment on house 3,000
 6. Furniture for house 1,000
 7. Shrubbery for house 1,000
 8. Ring for new wife 2,000

The defendant contends that plaintiff knew of all of these obligations except for the ring for his new wife. In plaintiff's bill of particulars she stated that her expenses for 1959 were $374.50 per month, or 50¢ less than she was awarded under the prior final decree and property settlement agreement. The plaintiff has since moved back to Philadelphia and states that her anticipated expenses for 1960 would be $726 per month, thus she requested additional alimony. There were no children born of the marriage and plaintiff has not in the past nor is she now gainfully employed.
Both parties agree that the alimony provision in the separation agreement is subject to modification in the event there is a substantial change in the circumstances of the parties, or either of them. We accordingly must first pass upon whether there has been a sufficient change in the financial condition of the husband to warrant the increase in alimony awarded by the chancellor.
*892 During 1958 Mr. Terry drew a salary of $600 per month from his Ford dealership and received a deferred bonus from Ford Motor Company from his prior employment of $4,300 in January, 1958. As of June, 1958, the Terry Ford dealership showed a net profit for the year of $800. By the end of the year 1958, the dealership showed a net income of $10,651 after all salaries, including Mr. Terry's, and all other depreciations and expenses had been deducted. It was upon this information and financial status that the court incorporated into the final decree the agreement between the parties whereby Mr. Terry was to pay his first wife $375 per month alimony until such amount was modified by the court or until the wife dies or remarries. The agreement was executed on February 9, 1959, and the final decree was entered on February 12, 1959, granting the appellee a divorce and incorporating the agreement into the decree.
During the year 1959, Mr. Terry withdrew a salary of $1,000 per month from his dealership and also withdrew the $29,000 which is previously itemized herein. At the hearing on appellee's petition for an increase in the alimony on February 11, 1960, Mr. Terry testified that the net profits of his dealership for 1959 was $29,341 after taxes; that he actually owned the stock of the dealership, but that 51% is in his name and 49% of the stock is in the present Mrs. Terry's name.
From the above detailing of the finances it is apparent that Mr. Terry's salary increased from $600 per month in 1958 to $1,000 per month in 1959; that the corporation income increased from $10,651 in 1958 to $29,341 in 1959; and that the corporation or dealership is for all practical purposes owned entirely by Mr. Terry.
We believe that a sufficient showing of change in Mr. Terry's ability to pay has been demonstrated so as to warrant the increase in alimony. Actual salary or income received is not necessarily the test in determining ability of a husband to pay alimony for as stated by the Court in Chastain v. Chastain, Fla. 1954, 73 So.2d 66, 68: "It may be that a man having capital assets worth more than $1,500,000 would have no net income." It is such a change as occurred in the instant case as must necessarily be contemplated by the language of § 65.15, Florida Statutes, F.S.A., which provides in part that if "the circumstances of the parties or the financial ability of the husband shall have been changed" since the execution of the agreement or the entry of the decree, the court may enter an order decreasing or increasing or confirming the payments. See 10 Fla.Jur.Divorce, Etc., § 198 et seq. The Court stated in Kosch v. Kosch, Fla. 1959, 113 So.2d 547, 550, in regard to the § 65.15:
"* * * This section of the Florida Statutes must be read into every alimony decree or every decree confirming a continuing agreement to pay alimony. When the agreement between husband and wife makes provision for the payment of alimony or sums in lieu of alimony in the future then the cited statute by its own force reserves the jurisdiction of the trial court to modify the alimony aspects of the decree upon a proper showing in the future. See 10 Fla.Jur. `Divorce, Separation and Annulment' Sec. 183 et seq."
After a careful study of the record and authorities applicable to the principles thus far discussed, we are of the opinion that there is ample evidence to support the increase in alimony to appellee-wife.
The appellee has cross-assigned as error the denial of attorney's fees by the chancellor on the theory that the agreement between the parties provided for such fees. Paragraph 21 of the agreement between the parties provides:
"21. Indemnification for Expenses of Suit to Enforce Agreement. Husband agrees to indemnify the wife for all expenses, costs and attorney's fees *893 resulting from or made necessary by the bringing of any suit or other proceeding to enforce the carrying out by the husband of any of the terms, covenants and/or conditions of this agreement, or to enforce any of the rights or to recover under any of the provisions of this agreement." (Emphasis added.)
The above provision relates to an action by the wife to enforce the terms of the agreement. The instant action was a petition for increase of alimony and not an action to enforce the agreement. There is no contention that the husband has failed to perform his duties under the agreement but, on the contrary, there is ample evidence that he has fully complied with the agreement. This proceeding would, therefore, appear to fall directly under § 65.15, Florida Statutes, F.S.A., as a proceeding to modify a prior award of alimony.
It is fundamental that attorney's fees cannot be awarded unless authorized by statute or by agreement of the parties, and it has been held that there is no statutory provision for the awarding of costs and expenses, including attorney's fees, in a proceeding under § 65.15. Gullette v. Ochoa, Fla.App. 1958, 104 So.2d 799. The distinction between § 65.15 and § 65.16 in regard to attorney's fees was stated by the Court in Graves v. Graves, Fla.App. 1959, 115 So.2d 451, 453, as follows:
"The award of attorney's fees to appellee's counsel by the chancellor was error. If the petition could be considered as an attempt under § 65.15, supra, to increase the support for the minor children provided for by the final decree, it would be erroneous to award attorney's fees for the simple reason there is no provision in the statute for such an award. Under § 65.16, Fla. Stat., F.S.A., provision is made for an award of reasonable attorney's fees in a proceeding brought for the purpose of enforcing the decree or order of the court providing for the payment of alimony or support for children. Inasmuch as the petition for modification was obviously not for the purpose of enforcing a decree or order of the court providing for the payment of alimony or support for children, an award of attorney's fees could not be justified under that section of the statute. See Gullette v. Ochoa, Fla.App. 1958, 104 So.2d 799."
In view of these authorities there was no error in denying the appellee's request for attorney's fees in her proceeding to seek a modification and increase of alimony. The judgment of the lower court is accordingly affirmed.
Affirmed.
KANNER and SHANNON, JJ., concur.