200 So.2d 849 (1967)
Mary J. OHMES, Appellant,
v.
Earl R. OHMES, Appellee.
No. 7384.
District Court of Appeal of Florida. Second District.
June 28, 1967.
*851 David Yost and Arthur D. Ginsburg, of Paderewski, Cramer, Robinson, Ginsburg & Ross, Sarasota, for appellant.
Gale K. Greene, Sarasota, for appellee.
PIERCE, Judge.
This is an appeal by Mary J. Ohmes, petitioner in the Court below, from a final order entered by the Manatee County Circuit Court, dismissing upon motion her petition for modification of Final Decree.
On April 6, 1966, petitioner filed in said Circuit Court her petition, alleging that on March 8, 1963, Final Decree of divorce had been entered by the Hardee County Circuit Court, Hon. Wm. K. Love, Judge, granting a divorce between her and her then husband, Earl R. Ohmes, and approving and making a part of said decree an "Agreement of Separation" entered into by the parties thereto on February 11, 1963, at Bradenton, Florida. A copy of the Hardee Circuit Court decree and of the Separation *852 Agreement therein referred to were attached to petitioner's petition in the instant case. The Agreement is somewhat prolix, but provides essentially that the husband, respondent here, pay to the wife, petitioner here, the sum of $25.00 per month for alimony, to continue until the death of one of the parties or remarriage of petitioner; payment by respondent of Court costs and attorney's fee for her attorneys; and execution by the parties to each other of certain reciprocal quit claim deeds and releases concerning specified real and personal properties.
The petition further alleged that, since the excution of the Separation Agreement and entry of the Hardee decree, "there has been a change in certain circumstances in that the petitioner's income has decreased to nothing while the respondent's income has greatly increased, and he has received a substantial inheritance providing him with a greater ability to pay". The petition thereupon prayed that the Hardee decree be modified by increasing her alimony provided therein.
Respondent filed answer and "Affirmative Defenses", setting forth (1) that the petition failed to state a cause of action upon which relief may be granted, (2) that the Hardee decree did not "reserve jurisdiction" to later modify the same and therefore the Manatee Circuit Court was without jurisdiction to entertain the instant petition, (3) that although "he has received an inheritance as alleged", his overall income has in fact decreased, and (4) that petitioner has violated certain terms of the Separation Agreement by failing to indemnify him with respect to certain of the obligations therein referred to.
After hearing, the Circuit Judge held that the agreement incorporated into the Hardee divorce decree was "a Property Settlement Agreement, which was made in good faith, and not a Separation Agreement", and therefore "should not be disturbed by the Court", and that the Manatee Court did not have jurisdiction of the instant petition because the Hardee final decree did not reserve jurisdiction of the cause "for the purposes outlined in the said Petition for Modification". The instant petition was thereupon dismissed.
The petition for modification was patently brought under F.S. Sec. 65.15 F.S.A., which because of its length will be included in full only in the margin.[1] Generally, it *853 provides that whenever "any Court of competent jurisdiction" has entered any decree in any divorce or separate maintenance case, requiring the payment by the husband to the wife of alimony or support payments, whether pursuant to an agreement between them or by the Court pursuant to testimony, "and the circumstances of the parties or the financial ability of the husband shall have been changed" since the agreement was executed or the decree rendered, "either party" may file application in any of certain specified Circuit Courts for modification of such decree, and the Court after hearing "shall make such order and judgment as justice and equity shall require, with due regard to the changed circumstances and the financial ability of the husband".
Said F.S. Section 65.15 F.S.A., was originally enacted as Chap. 16780, Laws of 1935, and has been the subject matter of extensive litigation since its enactment. Only a few of the decisions are necessary to be considered here, however, for purpose of disposition of the instant case.
Respondent questioned the jurisdiction of the Manatee Circuit Court on the ground that jurisdiction had not been reserved in the Hardee County decree so as to permit subsequent modification as to the amount of alimony. This is answered, however, by the affirmative provisions of Sec. 65.15, which provide a statutory right to modification without restriction as to reservation of jurisdiction in the decree sought to be modified. Kosch v. Kosch, Fla. 1959, 113 So.2d 547; Fowler v. Fowler, Fla.App. 1959, 112 So.2d 411; Schraner v. Schraner, Fla.App. 1959, 110 So.2d 33.
It is elementary in Florida law that the provisions of all Florida statutes touching upon the subject matter enter into and become a part of all contracts or agreements between parties to the same extent as if written therein in haec verba. Schekter v. Michael, Fla. 1966, 184 So.2d 641; Proser v. Berger, Fla.App. 1961, 132 So.2d 439; General Development Corp. v. Catlin, Fla. App. 1962, 139 So.2d 901; Lynch-Davidson Motors v. Griffin, Fla. 1965, 182 So.2d 7. Therefore, the terms and provisions of Sec. 65.15 were a component part of the Settlement Agreement here.
But as to another aspect of jurisdiction affecting the Manatee Circuit Court, a serious question, not raised by respondent, exists, which ordinarily would not be considered, but because it does pertain to the jurisdiction of the Court to adjudicate the subject matter before it, we must resolve it ex mero motu.
F.S. Sec. 65.15 F.S.A., confers jurisdiction to entertain such modification proceedings only upon certain specified Circuit Courts. These are summarized by Mr. Justice Buford, speaking for the Supreme Court, in Norton v. Norton, 1938, 131 Fla. 219, 179 So. 414, 415, in the following language:
"The statute [Sec. 65.15 F.S.] prescribes certain jurisdictional prerequisites and the existence of these prerequisites must appear affirmatively from the allegations of the petition. They are: (1) Petition may be filed in the circuit court of the circuit in which the parties, or either of them, shall have resided at the date of the execution of a property settlement agreement; or (2) in any circuit *854 where either party may reside at the date of such application, or in which agreement for property settlement or alimony shall have been executed; or (3) in any circuit court in which any husband has, pursuant to the decree of any court of competent jurisdiction, been required to make to his wife any payments for, or in lieu of, separate support, maintenance, or alimony."
The petition in the instant case does not allege that either party was a resident of Manatee County, only that "the Petitioner is a bona fide resident of the State of Florida". Also, it is not alleged that respondent has made any payments to petitioner, or been required so to do, in Manatee County. Also, it is not alleged that either party "resided" in Manatee County at the time the Separation Agreement in the Hardee County case was executed. They are only vaguely referred to in the Separation Agreement as being "of the County of Manatee", which could as logically be the county of their business headquarters or temporary sojournment as well as their permanent residence.
The Agreement, however, does show to have been executed by the parties "in Bradenton, Florida," which, on its face, satisfies one of the several alternative prerequisites of jurisdiction. We say "on its face" because, while copies of the Hardee decree and Settlement Agreement are "attached" to the petition filed in the Manatee Court they are not made a "part" of the petition nor is there any allegation whatever as to the contents of the Agreement in the body of the petition. However, upon consideration of the entire record before us, we will not hold the petitioner to have been wholly without standing in the Manatee Court upon this jurisdictional aspect. But a more attentive regard for the simple "jurisdictional prerequisites" erected in the Statute could quite easily avoid any question such as this.
This brings us to the real heart of the case. Respondent contended that the Hardee Final Decree encompassed and adopted a "property settlement agreement" of the parties not limited to an alimony or support agreement, and as such was not subject to the provisions of Sec. 65.15. The Chancellor agreed and dismissed the petition. The adjudicated cases construing Sec. 65.15 do not sustain such contention.
This is not a case where the parties make an agreement settling only the reciprocal rights and interests of the parties in their real and personal holdings, and either make no alimony provision for the wife or else affirmatively disclaim such allowance. This would be a pure property settlement agreement, as to which Sec. 65.15 assuredly has no application. Such was the nature of the agreement in Dix v. Dix, 1939, 140 Fla. 91, 191 So. 205, and in Haynes v. Haynes, Fla. 1954, 71 So.2d 491.
But where the agreement between the parties goes further than settling their pure property rights and provides affirmatively for payment by the husband to the wife of continuing alimony or support money for her maintenance, Sec. 65.15 does have application, albeit only as to those provisions which pertain to such payments.
This was the situation in Kosch v. Kosch, Fla. 1959, 113 So.2d 547. In that case Celia L. Kosch was divorced from Sidney Kosch in 1949. In 1958 she applied to the Dade County Circuit Court for an increase in the alimony payments provided for in the original decree. Such decree had ratified and confirmed a "Property Settlement Agreement" entered into between the parties, by which agreement the parties had made disposition of various property interests and rights, with the usual releases each from the other. The sole exception to this broad release provision was the husband's agreement to pay the wife a stipulated amount in monthly installments for her support. Justice Thornal for the Supreme Court distinguished several cases, in which there was no continuing obligation for alimony, with the factual situation in Kosch, *855 and in the process clarified the orbit of F.S. Sec. 65.15 F.S.A., as follows (text 113 So.2d 549 et seq):
"The binding effect of a complete property settlement agreement that defies subsequent modification is well-illustrated by Haynes v. Haynes, Fla. 1954, 71 So.2d 491. It will be noted that in Haynes there was no provision for continuing alimony payments. The agreement between the parties was in no fashion executory in nature. It became a binding, obligatory executed contract upon the entry of the final decree. There was no future commitment to the payment of alimony upon which Section 65.15, Florida Statutes, F.S.A. could operate. See also, Rice v. Rice, 148 Fla. 620, 4 So.2d 850; Cowen v. Cowen, Fla. 1957, 95 So.2d 584; Underwood v. Underwood, Fla. 1953, 64 So.2d 281; Valentine v. Valentine, Fla. 1950, 45 So.2d 885; Dix v. Dix, 140 Fla. 91, 191 So. 205.

"The confusion which apparently has arisen in cases of this type we believe has resulted from the failure to recognize the nature of the so-called `property settlement agreement'. Every agreement providing for the future payment of alimony or support money is not necessarily a final property settlement agreement that precludes subsequent modification by the court which enters the divorce decree.
"In fact, Section 65.15, Florida Statutes, F.S.A., specifically recognizes the possibility of arranging alimony payments by agreement between the parties. At the same time it likewise provides for the continuing jurisdiction of the trial court to modify the alimony or support money aspects of such an agreement as the circumstances might justify. This section of the Florida Statutes must be read into every alimony decree or every decree confirming a continuing agreement to pay alimony. When the agreement between husband and wife makes provision for the payment of alimony or sums in lieu of alimony in the future then the cited statute by its own force reserves the jurisdiction of the trial court to modify the alimony aspects of the decree upon a proper showing in the future. See 10 Fla.Jur. `Divorce, Separation and Annulment' Sec. 183 et seq." (Emphasis supplied).
See also to the same effect Chastain v. Chastain, Fla. 1954, 73 So.2d 66; Chiapetta v. Jordan, 1943, 153 Fla. 788, 16 So.2d 641; Dawkins v. Dawkins, Fla.App. 1965, 172 So.2d 633; Haynes v. Haynes, Fla. 1954, 71 So.2d 491; Hunter v. Hunter, Fla.App. 1959, 108 So.2d 478; Eisinger v. Eisinger, Fla. 1957, 95 So.2d 502, and Rieder v. Rieder, Fla.App. 1963, 157 So.2d 93.
The order appealed from dismissed the Petition for Modification without any hearing, upon the theory that F.S. Sec. 65.15 F.S.A., was not available to petitioner. In this, the Chancellor was in error under the decisions hereinbefore reviewed.
But this is not to say that, merely because petitioner must be accorded a hearing, all she would have to show would be an increase in respondent's earnings or capital worth, or an increase in her necessities. The change in circumstances must be substantial. The former wife shoulders a heavy burden when she embarks upon a hearing for an increase upward in the amount of alimony previously agreed upon by her and approved by the Court. The rule is that "[w]here parties in a divorce suit have, by mutual agreement, settled their differences by compromise, and court has ratified the compromise in final decree, a strong showing is required to modify the terms thereof." Chastain v. Chastain, supra; Cohn v. Mann, Fla. 1949, 38 So.2d 465.
But especially is this true where, in the settlement agreement between the parties, wherein the alimony amount is agreed upon, the wife has released or relinquished certain rights or interests she had, or may have had, in real or personal *856 property between them. The appellate Courts of Florida have spoken rather emphatically upon this point. Thus in Sedell v. Sedell, Fla.App. 1958, 100 So.2d 639, the 1st District Court held as follows (text 100 So.2d 642):
"Provisions of separation agreements or final decrees fixing the amount of support or alimony to be paid the wife may be modified or set aside upon application of either party when any of the grounds specified in the statute are shown to exist. Such is not the case, however, in those instances when the amount to be paid the wife is arrived at upon consideration of her agreement to relinquish special equities which she may have in property held by the husband and accumulated through the joint efforts of the parties during their marriage. In all such instances, only the strongest and most compelling reasons will justify the court in modifying or setting aside the amount which the parties have agreed should be paid to the wife." (Emphasis supplied)
Other Florida cases making similar enunciations are Vance v. Vance, 1940, 143 Fla. 513, 197 So. 128; Fort v. Fort, Fla. 1956, 90 So.2d 313; Howell v. Howell, Fla.App. 1964, 164 So.2d 231.
The answer of respondent in the Court below makes certain general averments, from which a factual situation might be developed which could bring it within the purview of the last cited cases. Also, the Settlement Agreement itself contains certain provisions which might indicate the applicability of the cases cited. All of this would be for the Chancellor to decide at the hearing. Our sole purpose here is to point out the various standards of proof which would have to be met by petitioner.
We might mention one other matter that could be pertinent at any subsequent hearing. Respondent in his answer to the petition averred that petitioner had breached certain of the terms of the Separation Agreement wherein she had agreed to indemnify respondent or save him harmless upon certain outstanding obligations wherein apparently they were both technically obligated; that he had been forced to make certain payments upon promissory notes against which he had been ostensibly protected by the agreement; and that several law suits had been filed against him and deficiency judgments even obtained upon obligations which she had assumed in the agreement.
As we say, these are only allegations in respondent's answer, and then only in very general terms. But if such allegations should be proved at the subsequent hearing to the satisfaction of the Chancellor, it could be detrimental to petitioner's right to modification, at least to the extent they were so proved.
This is so because of the ageold doctrine of "clean hands". It is axiomatic that one who seeks equity must do equity. The Florida Courts have frequently applied the rule against former husbands who come into an equity court seeking modification downward of a previous alimony, or even child support, decree where it develops that he is in substantial default in making the pre-existing payments or is otherwise in default. In such event, it has been uniformly held that the doors of chancery are closed to him so long as he is in such wilful default. Blanton v. Blanton, 1944, 154 Fla. 750, 18 So.2d 902; English v. English, Fla.App. 1960, 117 So.2d 559; Watson v. McDowell, Fla.App. 1959, 110 So.2d 680.
There is no legal reason why the rule should not be fully operative in a converse situation. Both parties stand before the Equity Court equally. If the bar of estoppel operates as a barrier to the former husband seeking modification, it should in a proper case operate as a barrier, and to the same extent, against the former wife.
We therefore reverse the order appealed from and remand the case to the lower Court for a hearing to be had upon the former *857 wife's petition, if she still desires one, conformable to the directions and observations hereinbefore made.
Reversed and remanded.
SHANNON, Acting C.J., and LILES, J., concur.
NOTES
[1] 65.15 Modification, alimony decrees, agreements, etc.

Whenever any husband and wife heretofore, or hereafter, shall have entered into any agreement providing for the payments for, or in lieu of, separate support, maintenance or alimony, whether in connection with any action for divorce or separate maintenance, or with any voluntary property settlement, or whenever any husband has pursuant to the decree of any court of competent jurisdiction been required to make to his wife any such payments, and the circumstances of the parties or the financial ability of the husband shall have been changed since the execution of such agreement, or the rendition of such decree, either party may apply to the circuit court of the circuit in which the parties, or either of them, shall have resided at the date of the execution of such agreement, or shall reside at the date of such application, or in which such agreement shall have been executed, or in which such decree shall have been rendered, for an order and judgment decreasing or increasing the amount of such separate support, maintenance or alimony, and the court, after giving both parties an opportunity to be heard, and to introduce evidence relevant to the issue, shall make such order and judgment as justice and equity shall require, with due regard to the changed circumstances and the financial ability of the husband, decreasing or increasing or confirming the amount of separate support, maintenance or alimony provided for in such agreement, or in such decree.
Thereafter the husband shall pay and be liable to pay the amount of separate support, maintenance or alimony directed in such order and judgment, and no other or further amount, and such agreement, or such decree, for the purpose of all actions or proceedings of every nature and wherever instituted, whether within or without this state, shall be deemed to be, and shall be, modified accordingly, and it shall be unlawful to commence, or cause to be commenced as party, or attorney, or agent, or otherwise, in behalf of either party in any court any action or proceeding otherwise than as herein provided, nor shall any court have jurisdiction to entertain any action or proceeding otherwise than as herein provided to enforce the recovery of separate support, maintenance or alimony otherwise than pursuant to such order and judgment.
This section is declaratory of existing public policy and laws of this state, which is hereby affirmed and confirmed in conformance with the provisions hereof, and it shall be the duty of the judges of the circuit courts of this state to construe liberally the provisions hereof in order to effect the objects and purposes hereof and the public policy of the state as hereby declared.