498 So.2d 1270 (1986)
Michele BERNSTEIN n/k/a Michele Alexanne, Appellant/Cross Appellee,
v.
Richard BERNSTEIN, Appellee/Cross Appellant.
No. 85-1134.
District Court of Appeal of Florida, Fourth District.
October 15, 1986.
Rehearing Denied January 16, 1987.
John R. Young of James and Young, West Palm Beach, for appellant/cross appellee.
*1271 Marjorie Gadarian Graham, Sidney A. Stubbs, Jr. of Jones & Foster, P.A., West Palm Beach, for appellee/cross appellant.
HERSEY, Chief Judge, for the Court, EN BANC.
Michele Bernstein, n/k/a Michele Alexanne, appeals the denial of her petition for an upward modification of child support and for attorney's fees. Visitation and child support were established by a Settlement Agreement which was incorporated in a final judgment of dissolution of marriage, entered in March of 1983. Denial of modification was based upon Michele's failure to sufficiently establish a change in circumstance. The trial court relied on the following statement of the law in denying her application:
Modification of child support and visitation provisions which are included in a settlement agreement incorporated into a final judgment require [sic] that the party seeking modification show a substantial change of circumstance which is significant, material, involuntary and permanent in nature. Where, as here, the amount of child support is based upon an agreement by the parties, a heavier burden rests upon the party seeking a modification than would otherwise be required. See Deatherage v. Deatherage, 395 So.2d 1169 (5 DCA FLA 1981); Lacy v. Lacy, 413 So.2d 472 (2 DCA FLA 1982); Burdack v. Burdack, 371 So.2d 528 (2 DCA FLA 1979); Flynn v. Flynn, 433 So.2d 1037 (4 DCA FLA 1983).
Both aspects of the trial court's summary of the law find support in the cases cited and others. All of the cases we have examined hold that the change in circumstances must be material, involuntary and permanent in nature. They also agree on a fourth requirement, although employing different labels: that the change be quantitatively significant, variously described in the cases as "significant," Burdack v. Burdack, 371 So.2d at 528; Deatherage v. Deatherage, 395 So.2d at 1169; "sufficient," Bish v. Bish, 404 So.2d 840 (Fla. 1st DCA 1981); and "substantive," In re Marriage of Johnson, 352 So.2d 140 (Fla. 1st DCA 1977). The difficulty we have is with the imposition of a "heavier burden" where the amount of child support payments is established by agreement. The general rule in civil cases is that the party having the burden of proof must demonstrate his right to prevail by a preponderance of the credible evidence. The burden of proof is ordinarily upon the party moving for relief, or, as here, seeking change or modification. Should the fact that Michele seeks to modify rights and obligations under an agreement somehow shift the burden of proof or make it more onerous? Or, as another court, approving the "heavier burden" concept, explains in amplification of the kind of showing that is required, are the cases really saying that "different rules apply to applications for modification of child support depending upon whether the support provisions are entered by order of the court or stipulated to by the parties"? Fritz v. Fritz, 485 So.2d 488, 489 (Fla. 3d DCA 1986) (citations omitted).
In order to answer that question it is necessary to find the source of the requirement that a heavier burden be imposed.
The following statement of the law applicable where modification of a contractual right to child support is sought first appeared in Burdack v. Burdack, 371 So.2d 528 (Fla. 2d DCA 1979), is repeated in Deatherage v. Deatherage, 395 So.2d 1169 (Fla. 5th DCA), appeal dismissed, 402 So.2d 609 (Fla. 1981), and is quoted with approval in Fritz, 485 So.2d at 489:
A fundamental prerequisite to modification of child support payments is a showing of substantial change of circumstances, including financial circumstances of one or both of the parties. Brown v. Brown, 315 So.2d 15 (Fla. 3d DCA 1975). This change in circumstances must be significant, material, involuntary, and permanent in nature. In re Marriage of Johnson, 352 So.2d 140 (Fla. 1st DCA 1977). The party seeking modification has the burden of showing this change in circumstances. Meltzer v. Meltzer, 356 So.2d 1263 (Fla. 3d DCA *1272 1978). And where, as here the amount of child support is based upon an agreement by the parties, a heavier burden rests upon the party seeking a modification than would otherwise be required. Scott v. Scott, 285 So.2d 423 (Fla. 2d DCA 1973).
The courts in both Burdack and Deatherage rely upon Scott for the proposition that: "[W]here, as here the amount of child support is based upon an agreement by the parties, a heavier burden rests upon the party seeking a modification than would otherwise be required." 371 So.2d at 529; 395 So.2d at 1170.
The court in Scott actually stated the following: "Where the amount of alimony is based upon agreement a heavier burden rests upon a party seeking a modification than would otherwise be required. Fowler v. Fowler, Fla.App. 1959, 112 So.2d 411; Nixon v. Nixon, Fla.App. 1967, 200 So.2d 263; and Ohmes v. Ohmes, Fla.App. 1967, 200 So.2d 849." 285 So.2d at 424-25 (emphasis added). Child support was not at issue. As indicated, the court in Scott relied upon three cases to support its "heavier burden" rule. Fowler and Ohmes involve no child support issues. In Nixon the "heavier burden" rule was applied solely to the alimony issue although there was also a child support issue on appeal.
It appears, then, that the "heavier burden" rule had its beginnings in alimony cases. Whether the transposition of the rule from an alimony setting to a child support setting by Burdack was inadvertent or purposeful is not apparent from reading the case. In either event, we question its appropriateness.
The best interests of the children are paramount in proceedings dealing with custody and child support. The statements in the cases are legion that these paramount interests will be protected by the state and by the courts, ex mero motu, should they be overlooked or adversely affected by actions of the parties:
"We know of no rule of law by which a father [or a mother] may by contract obviate or impair his [or her] obligation to support ... minor children...." Lee v. Lee, 157 Fla. 439, 26 So.2d 177, 179 (1946).
"Not only is this principle [welfare of minor children] implicit in [any] separation agreement but additionally it transcends any contractural [sic] provision in derogation thereof." Lang v. Lang, 252 So.2d 809, 812 (Fla. 4th DCA 1971).
"The law is clear that the parents may not contract away the rights of their child for support." Armour v. Allen, 377 So.2d 798, 799-800 (Fla. 1st DCA 1979). And as Judge Booth aptly stated in Armour: "Child support is a right which belongs to the child. It is not a requirement imposed by one parent on the other; rather it is a dual obligation imposed on the parents by the State." Id. at 800.
The authority to modify child support, regardless of any contract between the parents, is inherent in a court's authority. Guadine v. Guadine, 474 So.2d 1245 (Fla. 4th DCA 1985).
Such a contract [dealing with child support] will be given effect only to the extent that it is in the best interests of the child. Warrick v. Hender, 198 So.2d 348 (Fla. 4th DCA 1967).
If the law does not permit the provisions of an agreement pertaining to child support to prevail over the best interests of the child, we suggest that the mere existence of such an agreement should not be permitted to do so. Imposing a heavier burden upon the party seeking to vindicate those interests in fact subordinates the best interests of the child to contractual and procedural considerations.
The language of the applicable statute, which has been with us at least since 1935 in one form or another, makes no distinction between obligations imposed by the court and obligations established by a settlement agreement. The pertinent subparagraph of section 61.14, Florida Statutes (1985), provides:
(1) When the parties have entered into, or hereafter enter into, an agreement for payments for, or instead of, support, *1273 maintenance, or alimony, whether in connection with a proceeding for dissolution or separate maintenance or with any voluntary property settlement, or when a party is required by court order to make any payments, and the circumstances or the financial ability of either party has changed or the child or children who are beneficiaries of an agreement or court order as described herein have reached the age of 18 years since the execution of such agreement or the rendition of the order, either party may apply to the circuit court of the circuit in which the parties, or either of them, resided at the date of the execution of the agreement or reside at the date of the application, or in which the agreement was executed or in which the order was rendered, for a judgment decreasing or increasing the amount of support, maintenance, or alimony, and the court has jurisdiction to make orders as equity requires, with due regard to the changed circumstances or the financial ability of the parties or the child or children, decreasing, increasing, or confirming the amount of separate support, maintenance, or alimony provided for in the agreement or order.
Finally, there are the practical aspects of the situation to be considered. The trial court sets an amount of child support after careful consideration of the financial circumstances of the parties, including their assets, income, and expenses; the ordinary and special needs of the child; the standard of living of the parties; and other factors. The best interests of the child, however, are predominant in establishing the amount of child support.
While the trial court is required to examine a proposed settlement agreement dealing with custody and child support to safeguard the interests of the child, its vantage point is frequently obscured by the lack of complete disclosure by the contracting parties. All too often child support becomes just another poker chip in the give-and-take of settlement negotiations. A smaller amount may be acceptable to both parties for tax reasons. Child support may be bartered away for a vacant lot on the shores of a lake in Maine. That this occurs does not necessarily evidence lack of affection or solicitude of either parent for the child, but is inherent in the negotiation process, and may be aggravated by ill-will between the parties.
Because the best interests of the child are paramount in the objective evaluation by the court of the facts placed in evidence by the parties, whereas subjective considerations may adversely affect those provisions of an agreement negotiated by the parties concerning the child, there is simply no justification for imposing a heavier burden where the provision is established by agreement than where it is imposed by the court.
We therefore reject the proposition that there is a heavier burden on one moving for a change in the amount of child support established by a settlement agreement than where the amount has been established by the trial court. Summarizing, our reasons are: (1) The rule was inappropriately transposed from its origin in an alimony case to child support cases; (2) Public policy favoring the best interests of the child does not permit either the terms or the mere existence of a contract to impinge upon those interests; (3) The statute makes no such distinction; and (4) Such a provision set by the court is presumptively more attuned to the best interests of the child than a negotiated provision.
A party seeking a change in the amount of child support has the burden of proving a substantial change in circumstance, which change is significant, material, involuntary and permanent in nature. In order to carry that burden the moving party must show what the particular circumstances were at the time child support was established (or last modified) as compared with the present circumstances. The burden of doing so will be considerably lighter if the final judgment or settlement agreement which originally established the boundaries of the obligation to pay and the right to receive child support contains findings of fact (in the judgment) or factual *1274 recitations (in the agreement) as to the respective financial situations of the father and the mother, as well as the reasonable expectations of the child or children, based upon the pre-dissolution standard of living of the parties, and any special needs or other factors relevant and material to the best interests of the child or children at the time of establishment. This rule of thumb is, of necessity, flexible, and not every case will require complete reexamination of all aspects of the financial picture.
In the present case the trial court, and appropriately so, applied the standard enunciated in Flynn and other cases and found that because of her heavier burden, Michele had not successfully met the test for upward modification of child support. Having now discredited the Flynn "heavier burden" hypothesis we reverse and remand with instructions that the trial court reconsider the evidence in light of this opinion and the demise of Flynn.
Appellant also appeals the denial of her application for attorney's fees. On this point the trial court's order provides:
Based upon the financial circumstances of the parties, the Court would grant attorney's fees to the Former Wife. However, inasmuch as the Settlement Agreement incorporated in the Final Judgment provides that only the prevailing party shall be entitled to attorney's fees, the Former Wife's prayer for attorney's fees is denied.
Thus, the trial court made a finding that, but for the agreement, appellant would have been awarded her fees.
The rights of the minor child ordinarily have but one advocate, his or her custodial parent. If that advocate can be deprived by contract of the ability to retain competent counsel, then what the law says may not be done directly could be accomplished indirectly. Therefore, the rule that the parents cannot by contract adversely affect the child's rights must have a spillover effect on a contractual provision that would deny counsel to a party in need. On the other hand, the provision of the agreement in question for recovery of attorney's fees by the prevailing party has the salutory effect of eliminating harassment by reducing the number of frivolous matters being placed in litigation. It is therefore necessary to achieve a balance between these competing principles on a case-by-case basis, keeping in mind the rights of the minor children involved.
Because the trial judge erroneously assumed that he had no discretion in this regard, we direct that on remand he reconsider the application for attorney's fees.
To the extent of conflict with this opinion we recede from Flynn v. Flynn, 433 So.2d 1037 (Fla. 4th DCA 1983). We also acknowledge and certify conflict with Fritz v. Fritz, 485 So.2d 488 (Fla. 3d DCA 1986); Lacy v. Lacy, 413 So.2d 472 (Fla. 2d DCA 1982); Deatherage v. Deatherage, 395 So.2d 1169 (Fla. 5th DCA 1981); and Bish v. Bish, 404 So.2d 840 (Fla. 1st DCA 1981).
This case was considered en banc upon motion of the court because of the necessity for receding from Flynn.
REVERSED AND REMANDED WITH INSTRUCTIONS.
DOWNEY, ANSTEAD, LETTS, DELL, WALDEN, GUNTHER and STONE, JJ., concur.
GLICKSTEIN, J., concurs specially with opinion.
GLICKSTEIN, Judge, concurring specially.
I enthusiastically concur with Judge Hersey's decision to recede from Flynn and to eliminate from the path of children seeking adequate support the obstacle of an agreement reached by parents caught up in the gut-wrenching experience of a contested dissolution or debilitated by their individual insecurity, anger, frustration or lack of insight. I consider the reasons recited in the opinion to reflect an awareness of the real world and of Holmes' observation that the life of the law is experience, not logic. Further, the opinion will substantially benefit unknown children in the future.
*1275 There is language in the opinion which is both logical and problematical by requiring the movant to establish the circumstances at the time of settlement or adversarial resolution of the initial determination of support. Logically, one cannot show a change in circumstances without first showing the original circumstances, then showing how they have changed. Such burden becomes problematical if agreement has been reached prior to complete analysis of the child's needs, as in the case of the trade-off described in the court's opinion or in the event of an early settlement. That is going to place upon the movant the burden of reconstruction of the circumstances as they existed. Reconstruction of need will be much more difficult than reconstruction of ability. I question, then, whether we are substituting one obstacle for another, and suggest that the feasibility of such reconstruction should be a consideration for the trial court to weigh at the time of modification.
There is another consideration; namely, the tools available to trial lawyers who are fully informed about the subject matter. Some of these tools have been described by the writer in his dissent in McIntosh v. Althouse, 472 So.2d 1257 (Fla. 4th DCA 1985), including T. Espenshade, Investing in Children, New Estimates of Parental Expenditures (The Urban Institute Press 1984). Since that opinion, the Williams report, cited therein and prepared under the auspices of the Institute for Court Management of the National Center for State Courts, has been published. See R.G. Williams, Development of Formulas for Established and Updating Child Support Orders: Interim Report (June 7, 1985).
Also since the publication of that opinion, the Florida Governor's Commission on Child Support has made its report, reciting, inter alia, the following:
2. ISSUE. Federal law requires state adoption and implementation of guidelines for child support awards by October, 1987. Shall a specific guideline be legislatively prescribed as an integral part of the single bill recommended above?
DISCUSSION. Florida's performance, compared to other states, has been poor in establishing child support awards and in the level of support ordered by the courts. Some state courts have voluntarily developed or adopted guidelines but the consistency and outcomes of their application are not known to the Commission. The general pattern is one of individual judicial determination without objective guidelines.
A Task Group of the Commission studied the practices and instruments of other states and established a need for adoption and use of guidelines in Florida. Information from public hearings and other sources further support the assertion that guidelines are necessary to achieve equity and adequacy in child support awards. Specific, numeric guidelines, not merely broad principles or advisory pronouncements, are needed throughout the judicial system.
Different theories of economics and equity account for the development of several different guidelines used by various states. Most frequently used are models based on cost sharing, income sharing, income equalization, or a combination of these models.
The Commission has obtained and reviewed extensive information on different approaches and formulas. The Melson Formula, developed by a Delaware jurist and used since 1979 by that state and other states, is preferred by the Commission. This formula incorporates cost sharing and income sharing elements. In general, the Melson Formula establishes dollar requirements of basic subsistence for all persons involved, allocates income to meet these needs, then distributes remaining income equitably among children and parents.
RECOMMENDATIONS. The Commission recommends that:
a. The Melson Formula be adopted in legislation and provided as substantive direction to the courts for their consistent *1276 use in determining child support awards;
b. Statutory provision be made for exercise of judicial discretion in applying the guideline to cases of exceptionally low income of parents, or other extraordinary circumstances;
c. An advisory group be established to review annually the provisions, application, and consequences of the formula, and make recommendations for change, as necessary;
d. Child support awards determined by formula or other means be included in every decree concerning divorce, separation, paternity, or post-dissolution revision where minor children are involved;
e. Legislation take into account the needs of children with disabilities and those over 18 years of age who are in school;
f. The exceedingly low standard of need and level of payment in the Florida AFDC program not be used in establishing basic needs of parents and children in child support cases.
Id. at 31-34.
That trial lawyers have the responsibility of educating the trial court and can effectively assist their clients by doing so is illustrated by the early presentation of Louis Dembitz Brandeis, lawyer, before the United States Supreme Court in Muller v. Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908), which is colorfully described in Leonard Baker's book, Brandeis and Frankfurter (1984).
My final concern is the amount of time in which the child's rights have been caught up in the system. All of us involved in the system, lawyers and judges, have an obligation to get children through and out of the system in the briefest feasible time.
The petition for modification was filed in August, 1984. The trial court's order was entered in April, 1985. Two things come to mind. First, the child's needs as of the present time should also be the parties' and the trial court's concern, as the system is concerned with a child's present  as well as past  basic necessities of life, not just an abstract legal theory. Second, the trial court has the authority to effect modification as of the time of the filing of the petition for modification, August 1984, so as not to penalize the child for the passage of time.