DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DIANE BENDER,**
Appellant,

v.

**JACK SHATZ,** an individual, **LANCASTER AUTO PARTS, INC.,** an Ohio corporation, **DOUGLAS A. BENDER,** individually, **OPTIMAX, INC.,** a Florida corporation, **OPTIMAX SERVICE CORPRORATION,** a Florida corporation, **PRIVATE EQUITY REALTY, LLC.,** and **BANK OF AMERICA, N.A.,**
Appellees.

No. 4D19-3013

[July 15, 2020]

Appeal of non-final order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Cymonie S. Rowe, Judge; L.T. Case No. 2013-CA-013330.

Elliot B. Kula, W. Aaron Daniel, and William D. Mueller of Kula & Associates, P.A., Miami, for appellant.

Kathryn L. Ender and David M. Hawthorne of Lewis Brisbois Bisgaard & Smith, LLP, Coral Gables, for appellees, Jack Shatz, an individual, and Lancaster Auto Parts, Inc., an Ohio corporation.

GROSS, J.

Diane Bender appeals an order that denied in part her motion to quash a writ of garnishment after an evidentiary hearing.[1] The order allows appellees, Jack Shatz and Lancaster Auto Parts, Inc., judgment creditors of Bender's husband, to seize certain of the contents of a safe deposit box. We write to address Bender's argument on appeal that the trial court applied an incorrect burden of proof in ruling after an evidentiary hearing on her motion to dissolve the writ. This argument is precluded by the invited error doctrine, so we affirm the order of the circuit court.

---

[1] We have jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(ii).

In October 2018, the trial court entered final judgment for $497,800 against Diane's husband, Douglas Bender, in favor of Jack Shatz and Lancaster ("the judgment creditors"). The judgment creditors filed an ex parte motion for writ of garnishment to issue against Bank of America; referring to a particular branch, the motion alleged a reason to believe that the bank was "indebted to the Judgment Debtor, Douglas A. Bender or has in its possession, custody, or control goods, monies, chattels, or effects belonging to him."

The bank's answer to the writ noted minimal sums in two bank accounts and also disclosed the existence of a safe deposit box. The bank advised that the names on the box were Diane Bender, Douglas Bender, and the Benders' son and indicated that it was restricting access to the box, pending further order of the court.

As intervenor, Diane Bender answered and moved to dissolve the writ of garnishment. Diane stated that she has been married to Douglas for more than 25 years and that she alone owns the box and its contents. She said that she placed Douglas's name on the box in case she passed away. To support her representations, she attached her own affidavit and an affidavit from Douglas to the motion.

The judgment creditors denied Diane's allegations and requested an inspection of the box's contents. The circuit court directed an independent inventory of the box and ordered Diane to produce copies of any documents to prove ownership of the items in the box.

The inventory detailed 14 categories of items including documents (such as family passports, family birth certificates, and a warranty deed), coins, currency, and jewelry. The box contained 66 Krugerrands, 25 yellow metal coins stamped "Deutsche 20 Mark," a note from 1979 stating "50 gold coins," and three $100.00 U.S. Currency Bills. The coins and currency are at issue in this appeal.

Diane produced a copy of the safe deposit box rental agreement. Diane's name appears on the agreement as "Filing Name" and as "Account Title." Douglas and the couple's son also signed the agreement. The agreement designates all three of them as "Renter(s)." Diane furnished the box's access and entry history from 2006 to the present, which showed that Douglas had never accessed the box.

The circuit court held an evidentiary hearing during which Diane, her brother, and her husband testified.

Diane testified that she rented the box in 2014 and added her husband and son in 2016 as persons permitted access in case something happened to her. Diane furnished records to show that the two never accessed the box. Diane stated that *all* contents including *all* coins belonged to her. She described how she and her siblings split up the coins and jewelry four ways after her parents' deaths. There was no testimony about the currency.

On cross-examination, Diane conceded that some of the documentary items, like passports, belonged to her husband and children. The attorney contrasted this concession with an earlier statement in an affidavit where Diane had alleged that "all the contents" of the box were "exclusively hers." She explained that she gathered and placed the documents in the box that were important to her.

Diane's brother described how he and his siblings divided his parents' jewelry and gold coins. He testified that Diane received about 100 coins from her father. Significantly, this testimony contrasted with a statement in his earlier-filed affidavit that Diane had received about "30 gold coins – mostly Krugerrands." The brother did not know if the coins in the box were the same ones that Diane received from her father.

The judgment creditors called Douglas as a witness. Douglas was questioned about the fact that many assets, such as a Toyota Camry, were titled in his wife's name to keep him judgment proof.

By a corrected order on the motion to quash, the circuit court divided the disputed property. The court focused on the conflict between the brother's hearing testimony and his earlier affidavit to conclude that Diane inherited only 30 gold Krugerrands from her father. The court ruled that the remaining gold coins in the box and $300 cash would go to the judgment creditors towards satisfying their judgment.

Diane contends that the circuit court mistakenly placed the burden of proof on her to establish her exclusive ownership of the coins and cash. However, on appeal Diane cannot attack the trial court's allocation of the burden of proof because she invited any error. The hearing began with *Diane's attorney* acknowledging that Diane bore the burden to prove that she was the owner of the disputed property:

> If I may proceed, Your Honor, I believe that we have the burden of proving that, by a preponderance of evidence, that Mrs. Bender owns the contents of the box, so I think it would be appropriate for me to proceed first.

Under the invited error doctrine, a party may not make or invite error at trial and then take advantage of that error on appeal. *Franklin v. State*, 275 So. 3d 192, 195 (Fla. 4th DCA 2019). "This doctrine holds true whether the error was invited solely by appellant's counsel being unaware of the governing law, or jointly by appellant and his opponent." *Alexander v. Quail Pointe II Condo.*, 170 So. 3d 817, 822 (Fla. 5th DCA 2015) (citations omitted). "The fault should not be laid upon the trial judge; rather, it must be placed upon [the attorneys] who led the court into error." *Id.* (quoting *Keller Indus., Inc. v. Morgart*, 412 So. 2d 950, 951 (Fla. 5th DCA 1982)).

Diane argues that "[t]here is not a single shred of evidence that [Douglas Bender] owned any of the safety deposit box contents." However, within the procedural framework of the proceeding where she agreed that she had the burden of proof to establish her ownership of the coins, her evidence fell short. In a non-jury proceeding, the trial court has the "superior vantage point in assessing the credibility of witnesses." *See Porter v. State*, 788 So. 2d 917, 923 (Fla. 2001). The trial judge expressly placed great weight on the conflict between the brother's in-court testimony (Diane received about 100 gold coins from her father) and his prior affidavit (Diane received about 30 gold coins from her father). The trial judge was entitled to resolve this conflict by rejecting the testimony of Diane and her brother regarding her ownership of more than 30 gold coins in the safe deposit box; the trial judge was not required to accept Diane's version of ownership. *See Langel v. State*, 255 So. 3d 359, 363 n.3 (Fla. 4th DCA 2018). The trial judge concluded that Diane failed to meet the burden of proof to which the parties agreed.

Although Diane focuses in her briefing on the language of the bank's rental agreement, that agreement characterizes all three Benders who signed the agreement as "renters." The box was controlled by each of them, each had access to the box at all times, and each could place property into the box and remove it without the others' permission. The form of ownership of the box's contents was not set forth in the rental agreement. By relying on the rental agreement, the judgment creditors established that the three "renters" had some type of tenancy interest in the contents of the box, sufficient to require the tenant claiming an exclusive interest in property to prove it by the greater weight of the evidence. *See New York Cmty. Bank v. Bank of Am., N.A.*, 93 N.Y.S.3d 7 (App. Div. 2019), *leave to appeal denied*, 127 N.E.3d 318 (N.Y. 2019). As she agreed at trial, the burden of proof was on Diane to establish her sole ownership of the disputed property.

*Affirmed.*

KUNTZ, J., concurs.

WARNER, J., concurs specially with opinion.

WARNER J., concurring specially.

I concur in the majority opinion and write separately to note that when "any other person" claims an interest in garnished property pursuant to section 77.07(2), Florida Statutes (2019), the burden of proof is on that person to establish an ownership interest in the property that renders it not subject to garnishment. Thus, even without the concession of Diane's trial attorney, Diane had the initial burden of proof to show that she was the exclusive owner of the disputed coins, as the person seeking dissolution of the writ of garnishment.

To determine the proper burden of proof in a contested garnishment proceeding, it is necessary to grasp the mechanics of a Chapter 77 proceeding.

The judgment creditors obtained the writ of garnishment under section 77.03, Florida Statutes (2019), which allows for the issuance of a writ of garnishment after judgment when the plaintiff/judgment[2] creditor files "a motion (which shall not be verified or negative defendant's exemptions) stating the amount of the judgment." Under the statute, the motion for writ of garnishment requires two things—a judgment against an identified defendant and the amount of the judgment. The statute recognizes that it is not the burden of the plaintiff/judgment creditor to negative any "exemptions," matters of which a defendant would be aware.

As it applies to the property at issue in this case, section 77.04 requires the garnishee to serve "an answer on the plaintiff" stating whether the garnishee had in its possession "tangible or intangible personal property of [the] defendant" during the times specified in the writ. The garnishee bank's answer placed the contents of the safe deposit box in issue for the garnishment.

---

[2] Because the sections of the garnishment statute have been amended at different times, Chapter 77 is not a model of statutory draftsmanship. Section 77.07 uses "petitioner" and "plaintiff" interchangeably to refer to the person seeking to garnish something. Also, Chapter 77 uses the terms "plaintiff" and "defendant" to refer to the parties in the underlying case that generated the final judgment which the plaintiff/petitioner/garnishor is trying to collect. *See* § 77.03, Fla. Stat. (2019) (using the terms "plaintiff" and "defendant" to describe when a garnishment writ may be issued after judgment).

Diane, as "any other person having an ownership interest in the property" in the box, moved to dissolve the writ of garnishment under section 77.07(2). Diane's motion to dissolve asserted that she was the sole owner of all the coins. The motion to dissolve did not contend that an "allegation in [the judgment creditors'] motion for writ [of garnishment was] untrue." *Id.* She did not challenge the allegations of the judgment creditors' motion for the writ—that there was a judgment against Bender's husband in a certain amount.

Section 77.16 expressly applies to "[c]laims by third persons to garnished property," which is the claim raised by Diane in her motion:

> (1) If any person other than the defendant claims that . . . the property in the hands or possession of any garnishee is that person's property and shall make an affidavit to the effect, the court shall impanel a jury to determine the right of property between the claimant and plaintiff unless a jury is waived.

> (2) If the verdict is against the claimant, plaintiff shall recover costs. If the verdict is in favor of the claimant, the claimant shall recover costs against plaintiff.

Section 77.16 thus frames the proceeding as one between the third party "claimant" and the plaintiff. In legal proceedings, the burden of proof is typically placed on plaintiffs, claimants, and other parties "moving for relief." *Bernstein v. Bernstein*, 498 So. 2d 1270, 1271 (Fla. 4th DCA 1986) (en banc). The burden of proof is also placed on a person seeking to assert an affirmative defense. *Touchberry v. Nemec*, 264 So. 2d 466, 467 (Fla. 4th DCA 1972). Similarly, the burden of proving a Chapter 222, Florida Statutes exemption from garnishment is on the person claiming the exemption. *Cadle Co. v. G & G Assocs.*, 757 So. 2d 1278, 1279 (Fla. 4th DCA 2000). As a section 77.16 "claimant" to the disputed property, Diane bore the burden of establishing her claim by the greater weight of the evidence. Nothing in Chapter 77 expressly overrides this typical state of affairs.

*Branch Banking & Trust Co. v. Ark Development/Oceanview, LLC*, 150 So. 3d 817 (Fla. 4th DCA 2014), does not compel a different result. In *Branch*, a bank had garnished the accounts of a judgment debtor. The debtor's wife claimed that one of the bank accounts was her property and not that of her judgment debtor husband. On a motion for summary judgment, she proved her ownership of the account. The bank then claimed that, even if the wife owned the account, the monies in the account

may have been the result of a fraudulent transfer by the husband. Our observation concerning a garnishor's burden of proof was in the context of a garnishor claiming that funds had been fraudulently transferred to the third party's bank account. We wrote that "[a]lthough it has been held that a garnishor may use garnishment to obtain funds fraudulently transferred to a third party, it is the *garnishor's* burden to prove that the property garnished was the property of the debtor."[3] *Id.* at 820. Because the garnishor was the claimant on a fraudulent transfer claim, it bore the burden of proof. Here, by contrast, Diane bore the burden of proof as a third party claimant to garnished property.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***

---

[3] We took the latter portion of this quote out of context in *Stanbro v. McCormick, 105, LLC*, 213 So. 3d 925, 927 (Fla. 4th DCA 2017). In *Stanbro*, this court suggested that the garnishor bore the burden of proof in a case that did not involve allegations of fraudulent conduct, stating: "When the account contains more than one name and a third party named on the account claims ownership of the account's funds, the garnishor must prove that the garnished funds belong *exclusively* to the debtor." *Id.* Nonetheless, the third party seeking to dissolve the writ of garnishment carried the burden of proving his ownership of the garnished funds. This court found that the garnishor failed to *rebut* the owner's evidence "establishing that the account, and the monies in it, belonged exclusively to the owner, not the debtor, and therefore was not subject to garnishment." *Id.* Thus, the initial burden of proof appears to have been placed upon the third party claiming ownership and not the garnishor.