610 So.2d 681 (1992)
Donald R. WIEDMAN, Appellant,
v.
Joyce M. WIEDMAN, Appellee.
No. 91-2122.
District Court of Appeal of Florida, Fifth District.
December 18, 1992.
*682 Nichole Caruso Seropian, of Law Office of Joe Teague Caruso, P.A., Merritt Island, for appellant.
James R. Dressler, Cocoa Beach, for appellee.
DIAMANTIS, Judge.
Donald Wiedman appeals the trial court's order which denied his petition to reduce or terminate the periodic alimony payments that he must pay to Joyce Wiedman, his former wife. Wiedman based his claim for relief upon the fact that he was forced to retire because of poor health. We affirm.
A party seeking modification of permanent periodic alimony must show a substantial change of circumstances. Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla. 1980); Chastain v. Chastain, 73 So.2d 66, 68 (Fla. 1954); § 61.14(1), Fla. Stat. (1991). Appellant had initially agreed to the alimony which the trial court set and, therefore, as the party seeking a change, he carries "a heavier than usual burden of proof." Pimm v. Pimm, 601 So.2d 534, 537 (Fla. 1992) quoting Tinsley v. Tinsley, 502 So.2d 997, 998 (Fla. 2d DCA 1987).
The trial court ruled that appellant failed to sustain his burden of proving entitlement to modification because, although his retirement was involuntary, appellant failed to present any evidence that he is unable to obtain alternative employment suitable to his health or that his employment income potential is any less now than it was at the time of the final judgment. We agree with the trial court that appellant did not meet this burden of proof.
However, unlike the concurring opinion, we conclude that the ruling in Pimm v. Pimm, supra, which considered the issue of whether "voluntary retirement" is a reasonable basis for modifying alimony, is not applicable to this case because here, appellant was subject to an "involuntary retirement". In Pimm v. Pimm, the Florida Supreme Court specifically stated:
In determining whether a voluntary retirement is reasonable, the court must consider the payor's age, health, and motivation for retirement, as well as the type of work the payor performs and the age at which others engaged in that line of work normally retire. The age of sixty-five years has become the traditional and presumptive age of retirement for American workers: many pension benefits maximize at the age of sixty-five; taxpayers receive an additional federal tax credit at the age of sixty-five in recognition of the reduced income which accompanies retirement; under the Social Security Act the definition of "retirement age" includes "65 years of age"; and the Employee Retirement Income Security Act of 1974 defines "normal retirement age" as including the "time a plan participant attains age 65." Based upon this widespread acceptance of sixty-five as the normal retirement age, we find that one would have a significant burden to show that a voluntary retirement before the age of sixty-five is reasonable.
* * * * * *

Voluntary retirement cannot be considered a change of circumstance which would warrant a modification of child support. (footnotes omitted, emphasis added.)
Pimm, 601 So.2d at 537. Obviously, an involuntary retirement may not always be considered the equivalent of a voluntary retirement because different factors and considerations may result in an involuntary retirement, and the effect of such factors and considerations upon the ability to pay *683 alimony may have to be weighed differently.
Accordingly, we conclude that the trial court did not abuse its discretion in denying appellant's petition for modification and, therefore, affirm the trial court's ruling.[1]
AFFIRMED.
PETERSON, J., concurs.
W. SHARP, J., concurs specially, with opinion.
W. SHARP, Judge, concurring specially.
Donald Wiedman appeals from a denial of his petition for modification of his dissolution judgment by reducing or terminating the periodic permanent alimony payments he is obligated to pay to Joyce Wiedman, his former wife. He argues that the trial court's finding that his early retirement was "involuntary" because it was induced by medical and health considerations mandates that his alimony obligation be reduced. I disagree. I would resolve this case by applying the Florida Supreme Court's most recent decision on this issue, Pimm v. Pimm, 601 So.2d 534 (Fla. 1992), which was not available at the time this cause was tried.
The record in this case shows that the parties had been married for twenty-eight years. They divorced in 1985, and Joyce was originally awarded $1,235.00 per month periodic permanent alimony. On October 9, 1990, the parties stipulated and agreed that the alimony would be reduced to $1,200 per month, in exchange for dropping a provision in the prior decree that Joyce would seek employment and Donald would get a fifty percent net reduction if she earned above a certain level.
During the marriage, Joyce was exclusively a housewife and homemaker. After the dissolution, she has worked at minimum wage jobs, without any benefits. Currently, her gross wage is $375.00 per month. She has limited cash assets and resources, and no prospects of improving her financial situation. Donald admits she is totally financially dependent upon him.
Both at the time of the dissolution and the later stipulation, Donald suffered from heart problems and cardiovascular disease. In 1977 and in 1988, he had bypass surgeries. For a number of years prior to his retirement, he held a highly stressful job as a safety supervisor for Pan Am World Services at the Kennedy Space Center. He supervised safety procedures for shuttle, Atlas and Star Bird launches, and oversaw the handling of explosive propellants and high-pressure gases. His salary and pension from the Air Force totalled $3,600 per month (net).
In 1990, shortly after stipulating to the alimony reduction, Donald testified he felt his job was becoming increasingly stressful. He experienced pain in his chest. He was checked out by his cardiologists in Orlando. They found nothing objectively amiss with his heart or the bypass vessels.
His internist, Dr. Garel, who also worked with his cardiovascular surgeons, advised him in January of 1991, to retire from his job at the Space Center. Garel testified that Donald's current problems appeared to be mainly "subjective," but they were related to the mental stress of his job. He said he thinks there is a relationship between stress and coronary artery disease. Stress can make it worse.
In February of 1991, Donald retired from his job at the Cape. He was sixty-one years old. Almost immediately, he petitioned to reduce his alimony obligation owed to Joyce.
Following a hearing on Donald's petition, the court found that after retirement, Donald's income dropped from $3,736 (gross) per month, to $2,108. Donald admitted he had not sought any other less stressful jobs at the Cape or elsewhere, nor had he *684 sought any disability payments from Social Security. He also testified he theoretically could work at a different job, if it did not entail too much stress.
Shortly after retiring, Donald and his girlfriend motored across the country to tour the West. She also had just retired from a job at the Cape in February of 1991. Donald testified he had not yet had to draw on his 401K Plan to meet living expenses although he could do so. He said he was living on his savings account, although he admitted it had increased rather than decreased in value since retirement. The court said it wanted to know whether there were other options open to Donald other than his high stress job and doing nothing. Donald made no showing he was physically unable to hold another less stressful job, or what amount of remuneration he was capable of earning in such a position.
Based on this record, the trial court found:
(c) Mr. Wiedman's retirement is determined to be `early retirement', since he was 61 years of age and could have worked a number of years more, together with the fact that his employer was satisfied with Mr. Wiedman's job performance. The early retirement was precipitated by Mr. Wiedman's ongoing heart problems aggravated by stress, so as to prompt Mr. Wiedman's doctor to recommend retirement for the sake of Mr. Wiedman's health.
* * * * * *
(e) Mr. Wiedman's retirement, although `early retirement', was involuntary; however, the Court finds that Mr. Wiedman has totally failed to show that he is not able to be employed in alternative employment areas not involving detrimental stress.
(f) Mr. Wiedman having failed to present evidence that he is unable to obtain alternative employment suitable to his health; and Mr. Wiedman having further failed to show that his employment income potential is any less now than it was at the time of the final judgment, the court determines that his petition should be denied. Ensley v. Ensley, 578 So.2d 497 (Fla. 5th DCA 1991).
Ensley dealt with whether income should be imputed to a parent in setting child support in a dissolution case pursuant to section 61.30(2)(b). We upheld the trial court's refusal to impute income to the father at the level of his $60,000 per year job in that case because he produced evidence that he diligently sought employment at his prior level, and was only able to find a position paying $23,920 per year, which was commensurate with his occupational qualifications and earnings available to him. In that case, we said the trial court could not impute income to a parent unless it found: 1) termination of the prior higher paid job was voluntary, and 2) employment at the lesser rate was due to a less than diligent or bona fide effort to obtain a job at the prior level.
Donald argues that the trial judge's conclusion in this case that his retirement from the Kennedy Space Center job was "involuntary", automatically removes him from the ambit of Ensley, which, if the second portion of the test were met, would permit the court to impute income to him. To the extent Ensley applies in this context, it is necessarily controlled by the Florida Supreme Court's more recent decision of Pimm v. Pimm. Pimm, as well as a host of other Florida Supreme Court cases, which reject Donald's per se approach that proof of any one set of facts, such as voluntary or involuntary retirement, requires (as a matter of law) any set result. See Fort v. Fort, 90 So.2d 313 (Fla. 1956).
For this reason I disagree with the majority opinion in this case. The trial court's determination that Donald's retirement was "involuntary" is no longer key, nor determinative (in my opinion), after Pimm, supra. The question should be solely: was it reasonable for Donald to exit the work-force completely under these circumstances?
In Pimm, the Second District certified a question to the Florida Supreme Court, which the court answered in the affirmative:

*685 Is the postjudgment retirement of a spouse who is obligated to make support or alimony payments pursuant to a judgment of dissolution of marriage a change of circumstances that may be considered together with other relevant factors and applicable law upon a petition to modify such alimony or support payments?
Significantly, the question was not limited to "voluntary" or "involuntary" retirement. Pimm holds that retirement of a payor spouse is a legitimate factor to consider in a modification proceeding, in most cases, if the retirement is "reasonable."
In considering whether the retirement is "reasonable," the Florida Supreme Court said the trial court should consider the payor spouse's age, health, motivation to retire, type of work performed, and the normal age of retirement (set at sixty-five years presumptively for most United States workers). If the payor spouse is below sixty-five, the court said the party seeking to reduce the alimony paid to a dependent spouse would have a "significant burden" to show that a voluntary retirement was reasonable. Further, the court said the trial court should also consider whether reduction of alimony would put the receiving spouse in peril of poverty, in deciding whether the retirement is "reasonable", even if the payor spouse is sixty-five years old or older.
In this case, Donald's retirement from the Kennedy Space Center was found to be "involuntary", based on health and medical reasons. Evidence adduced at the trial supports the judge's conclusion on this issue. However, according to the rationale of Pimm, that is no longer determinative. The trial court also found Donald's failure to seek out another job at a similar salary, without the stress factor, or any job at all, was unexplained and unjustified. In sum, to rephrase under Pimm, the trial court "found" Donald's complete exit from the work force was not "reasonable," thus justifying its denial of Donald's petition to modify.
The trial court was also justified in considering the impact on Joyce of Donald's request for reduction of alimony. Since the dissolution, she has had to work at a minimum wage job and will continue to have to do so, even if the amount of alimony is not reduced. She has minimal assets and resources. She is almost completely dependent upon alimony for support. The impact on her of any alimony reduction would be harsh.
In Pimm, the supreme court also reaffirmed a well-established common law principle applicable to this case: Where the parties by agreement or stipulation specify the level of support or alimony, the party seeking to modify or terminate it "carries a heavier than usual burden of proof."[1] In this case, Donald's support obligation to Joyce was set by a settlement agreement incorporated into the judgment, and its subsequent reduction was set by stipulation filed with the court. These facts, plus the fact that Donald is not yet sixty-five years of age, place upon him "a heavier than usual burden of proof" (or a "significant burden") to show his complete exit from the work force was "reasonable." Pimm, supra.
In essence, Pimm focuses the issue in modification cases involving retirement back on how that event affects the bottom line of the obligated spouse's ability to pay the needed level of support. See Schiff v. Schiff, 54 So.2d 36 (Fla. 1951); Johnson v. Johnson, 516 So.2d 1116 (Fla. 2d DCA 1987); Henderson v. Henderson, 463 So.2d 485 (Fla. 2d DCA 1985); Brown v. Brown, 440 So.2d 16 (Fla. 1st DCA 1983); Withers v. Withers, 390 So.2d 453 (Fla. 2d DCA 1980), rev. denied, 399 So.2d 1147 (Fla. 1981); Fowler; Fort; Smith v. Smith, 419 A.2d 1035 (Me. 1980). Even though a spouse's income may drop, if that spouse has other assets with which to meet an alimony obligation, reduction will not be *686 allowed.[2] Or, if a party has the ability to earn funds to support a needy spouse, and under the circumstances and in good conscience, should be required to do so, no reduction is proper.[3]
Applying the rationale of Pimm to this case, based on the record and the findings by the trial court, I find no error in the court's denial of Donald's petition to modify his alimony obligation owed Joyce, by reducing or terminating it.[4] Under Pimm, and established case law, he had a heavier than usual burden of proof to succeed below and the trial court's decision has the presumption of correctness in this court. See Gaddy v. Gaddy, 415 So.2d 37 (Fla. 1st DCA 1982); Brooks; Landry; Desilets. For these reasons, I agree this case should be affirmed.
NOTES
[1] We note that the case of Ensley v. Ensley, 578 So.2d 497 (Fla. 5th DCA 1991) dealt with the initial setting of support where the paying spouse voluntarily terminated employment paying $60,000 per year and, after diligent effort, could only find employment paying $23,920 per year. Because Ensley did not involve a proceeding to modify either support or alimony which was initially set by a court pursuant to the agreement of the parties, the decision does not consider the principles of law peculiarly applicable to a modification proceeding.
[1] See Petty v. Petty, 548 So.2d 793 (Fla. 1st DCA 1989); Tinsley v. Tinsley, 502 So.2d 997 (Fla. 2d DCA 1987); Brooks v. Brooks, 423 So.2d 995 (Fla. 3d DCA 1982); Freeland v. Purcifull, 347 So.2d 726 (Fla.2d DCA 1977); Scott v. Scott, 285 So.2d 423 (Fla. 2d DCA 1973); Fowler v. Fowler, 112 So.2d 411 (Fla. 1st DCA 1959).
[2] See Chastain v. Chastain, 73 So.2d 66 (Fla. 1954); Landry v. Landry, 436 So.2d 353 (Fla. 1st DCA 1983).
[3] Compare Greene v. Greene, 547 So.2d 1302 (Fla. 2d DCA 1989). See Desilets v. Desilets, 377 So.2d 761 (Fla. 2d DCA 1979); Fried v. Fried, 375 So.2d 46 (Fla. 2d DCA 1979); Bradley v. Bradley, 347 So.2d 789 (Fla. 3d DCA 1977); Osman v. Osman, 280 So.2d 67 (Fla. 3d DCA), cert. denied, 289 So.2d 6 (Fla. 1973); Foster v. Foster, 537 S.W.2d 833 (Mo. App. 1976). See In re Marriage of Smith, 77 Ill. App.3d 858, 33 Ill.Dec. 332, 396 N.E.2d 859 (1979).
[4] Benz v. Benz, 355 So.2d 214 (Fla. 1st DCA 1978); Norton v. Norton, 328 So.2d 484 (Fla. 1st DCA 1976).