970 So.2d 388 (2007)
Eduardo LOPEZ, Appellant,
v.
Minita LOPEZ, Appellee.
No. 3D06-3067.
District Court of Appeal of Florida, Third District.
November 7, 2007.
*389 Leonardo G. Renaud, Miami Lakes, for appellant.
Kenneth M. Kaplan, for appellee.
Before SHEPHERD, SUAREZ, and ROTHENBERG, JJ.
ROTHENBERG, Judge.
The former husband, Eduardo Lopez, appeals from a final judgment modifying his alimony obligation to his former wife, Minita Lopez, which was entered by the trial court upon remand from this Court in Lopez v. Lopez, 920 So.2d 1165 (Fla. 3d DCA 2006). We reverse and remand for entry of an order consistent with this opinion.
In Lopez, this Court reviewed an order terminating the former husband's alimony obligation to the former wife. This Court summarized the pertinent facts leading to the entry of that order as follows:
The parties were divorced in December of 1993. As part of the Final Judgment of Dissolution of Marriage, former wife was awarded permanent alimony in the amount of $2,000.00 per month. The trial court reserved jurisdiction pursuant to Pimm v. Pimm, 601 So.2d 534 (Fla. 1992), to consider former husband's permanent alimony obligation upon his reasonable retirement. At the time of the dissolution, former husband was a bank executive with an annual salary of $92,000.00. Former wife was 48 years old and unemployed.
On June 18, 2004, former husband filed a Supplemental Motion for Modification on the ground that his employment was involuntarily terminated effective May of 2004, that he retired as a result, and that his retirement income was $1,588.00 per month. Former husband's financial affidavit established that he is living in a deficit, which requires him to draw from his retirement savings each month.
Former husband's Motion was set for final hearing on several occasions but was continued when former wife did not comply with the financial disclosure requirements. On December 3, 2004, former husband filed a Motion for Default. The trial court granted the Motion for Default and as a result, without taking any evidence except for Husband's financial affidavit, the court granted Husband's Supplemental Motion to Modify Alimony Obligation. The court cited former wife's failure and refusal to comply with discovery to support the default, found that former husband does not have the present ability to make alimony payments, and entered a Final Judgment for Termination of Alimony Payments.
*390 Lopez, 920 So.2d at 1166-67.[1]
In appealing the order terminating the former husband's alimony obligation in the former appeal, the former wife raised two arguments. First, she claimed that although the trial court entered a default judgment against her for failing to comply with discovery requests, it was error to enter the default judgment "without conducting an evidentiary hearing to inquire into former husband's assets and the reasonableness of former husband's retirement in light of his age, ability to remain employed, and former wife's needs." Id. at 1167. Second, she claimed that "the court erroneously terminated former husband's alimony obligation where former husband only sought a reduction of alimony." Id.
On appeal this Court concluded that the trial court did not abuse its discretion in entering the default based on the former wife's failure to comply with discovery, id. at 1167 n. 1, but agreed with the former wife that the trial court erred in failing to hold an evidentiary hearing, and stated as follows:
Although former wife defaulted, and should be precluded from presenting any evidence, husband must still meet his burden of establishing a substantial change in circumstances, and wife is entitled to cross examine and challenge that evidence. Accordingly, we find that the trial court abused its discretion in failing to hold an evidentiary hearing on husband's Motion for Modification.
Id. at 1167. This Court additionally agreed with the former wife that the former husband's alimony obligation could not be terminated as his pleadings requested a modification, not a termination. Id. at 1168. Based on its rulings, this Court reversed and remanded for an evidentiary hearing to determine the proper modification, if any, noting that while the former wife could not present evidence at the hearing, she could "challenge former husband's basis, and evidence, for modification and may cross-examine former husband." Id. at 1168 n. 2.
The order currently under review is the Final Judgment of Modification entered by the trial court after it conducted the evidentiary hearing ordered by this Court in Lopez. Consistent with this Court's directive in Lopez, only the former husband testified. In addition to the facts set forth in Lopez, the former husband testified that in 1999 or 2000, he was terminated from his employment when the bank he was working for at the time closed. After approximately two years of actively seeking employment, he was hired by another bank for approximately $38,000 per year. Based on the reduction of his income, he sought to reduce his alimony obligation to his former wife. In 2002, the modification was granted, and his alimony obligation to his former wife was reduced from $2,000 to $1,250 per month.
After working for this bank for approximately three years, in May 2004, the former husband was terminated when that bank also closed. The former husband, who was sixty-six years old when he was terminated from this bank, was not able to obtain employment due, in part, to his lack of familiarity with the technology that banks were currently using.
At the time of the hearing, the former husband owned a modest condominium and vehicle, and had approximately $66,000 in savings, and his monthly income was limited to $1,719 in Social Security and approximately $200 to $300 in interest. He further explained that he had been *391 slowly depleting his savings because his monthly expenses exceeded his monthly income.
On cross-examination, the former wife's attorney questioned the former husband as to a real estate investment. The former husband explained that he purchased an apartment building after losing his position at the first bank, intending that the rental of the units in the building would provide him with a source of monthly income. He purchased and repaired the apartment building by depleting his retirement and bank accounts, and by obtaining a substantial mortgage and private loans. The former husband explained that he "know[s] nothing about real estate," and that he "did a lousy job with the buildings." He sold the apartment building two to three years later after obtaining employment at the second bank. With the funds he netted from the sale of the building, he paid the tax liability due from the sale, and he purchased the condominium he currently lives in for $110,000. The funds he currently has in his savings account are the funds remaining from the sale of this building.
Following the former husband's testimony and arguments by the parties' counsels, the trial court recognized that pursuant to Pimm, it was required to consider the financial needs of the receiving spouse, here the former wife, and the impact that termination or modification of support would have on that spouse. Pimm, 601 So.2d at 537.[2] The trial court, however, noted that because the former wife failed to provide financial information and to otherwise comply with her discovery obligations in Lopez, this Court precluded the former wife from presenting evidence at the evidentiary hearing, and the former wife's current financial situation was unknown. In order to resolve this dilemma, the trial court stated that it would examine the final judgment of dissolution of marriage entered in 1993 and the general master's *392 report from the 2002 modification proceeding.
In assessing the factors set forth in Pimm, the trial court found that the former husband's retirement age was reasonable; that his retirement was involuntary; that the former husband's skills have become "significantly obsolete"; and that the former husband's "retirement was not motivated by any desire to eliminate the [former] wife's opportunity to receive alimony."
As to the former wife's financial situation, the trial court noted that the final judgment of dissolution of marriage reflects that the former wife was awarded half of the marital home, which had approximately $280,000 in equity in 1993, and half of the husband's pension, which was valued at $145,000 in 1993. The trial court also noted that the general master's report from the 2002 modification proceedings provided no findings as to the wife's assets, but only stated that the wife testified that she had no income. As to the former husband's current financial situation, the trial court found that his monthly expenses exceed his monthly income by $140; he owns his condominium; and he has "cash assets, but he should not be required to disperse them completely."
Finding that the former husband established a substantial involuntary change of circumstances, the trial court entered a Final Judgment of Modification, reducing the former husband's monthly alimony obligation to the former wife from $1,250 to $500. The former husband appeals that order.
The former wife did not file a cross-appeal challenging the trial court's conclusion that the former husband is entitled to a downward modification of his support obligation to his former wife. Therefore, the only issue under review is whether the trial court abused its discretion by not further reducing the former husband's support obligation. Based on the unique circumstances presented here, we conclude that the trial court abused its discretion.
Here, the unrebutted evidence presented at the hearing demonstrates that the former husband involuntarily retired. Moreover, although he lives a modest lifestyle, his monthly expenses exceed his monthly income, and therefore, he must draw from his savings each month.
With regard to the former wife's financial situation, due to her failure and continued refusal to comply with discovery, she was precluded from presenting any evidence at the hearing. As a result of the former wife's actions, the trial court was presented with a very difficult situation because it had no evidence whatsoever regarding the former wife's current finances. In an attempt to resolve this dilemma, the trial court reviewed the 1993 final judgment of dissolution of marriage and the general master's report from the 2002 modification proceeding. Although these documents shed light on the assets awarded to the former wife in 1993, these documents do not reflect the former wife's current financial situation or whether the wife still possesses these assets. One would think that if the former wife was in need of financial support, she would have submitted the required discovery. The former wife's refusal to submit the required discovery, however, should not work to her benefit, and the former husband should not be penalized by her failure to provide the necessary financial information.
Additionally, although the former husband was required to pay the former wife $1,000 a month for three years for rehabilitative alimony, there is nothing in the record as to the former wife's attempt(s) to obtain gainful employment to offset her *393 expenses. The record reflects that she was forty-eight years old at the time of dissolution. Under these circumstances, requiring the former husband to draw from his savings to pay the former wife $500 per month in alimony was an abuse of discretion. We, therefore, reverse the order under review with directions to enter an order reducing the former husband's support obligation to one dollar per month. See Zeballos v. Zeballos, 951 So.2d 972, 975 (Fla. 4th DCA 2007) (reducing former husband's alimony obligation to one dollar per month, thereby allowing the trial court "to retain jurisdiction to consider modification should the parties' circumstances substantially change in the future").
Reversed and remanded for entry of an order consistent with this opinion.
NOTES
[1] The record on appeal indicates that the former wife also received monthly rehabilitative alimony in the amount of $1,000 for three years.
[2] In Pimm, the Florida Supreme Court set forth several factors that a court must consider in determining whether a voluntary retirement is reasonable. Specifically, the Court stated:

In determining whether a voluntary retirement is reasonable, the court must consider the payor's age, health, and motivation for retirement, as well as the type of work the payor performs and the age at which others engaged in that line of work normally retire. The age of sixty-five years has become the traditional and presumptive age of retirement for American workers. . . . Based upon this widespread acceptance of sixty-five as the normal retirement age, we find that one would have a significant burden to show that a voluntary retirement before the age of sixty-five is reasonable. Even at the age of sixty-five or later, a payor spouse should not be permitted to unilaterally choose voluntary retirement if this choice places the receiving spouse in peril of poverty. Thus, the court should consider the needs of the receiving spouse and the impact a termination or reduction of alimony would have on him or her. In assessing those needs, the court should consider any assets which the receiving spouse has accumulated or received since the final judgment as well as any income generated by those assets.
Id. In the instant case, the trial court found that the former husband's retirement was involuntary. Thus, it is questionable whether Pimm is applicable. See Wiedman v. Wiedman, 610 So.2d 681, 682 (Fla. 5th DCA 1992) ("[W]e conclude that the ruling in Pimm . . ., which considered the issue of whether `voluntary retirement' is a reasonable basis for modifying alimony, is not applicable to this case because here, [former husband] was subject to an `involuntary retirement[.']") Nonetheless, even when the paying spouse's retirement is involuntary, it is appropriate for the trial court to consider the receiving spouse's financial needs when ruling on a petition for a downward modification of alimony. Further, a review of the transcript of the evidentiary hearing reflects that the trial court found that the former husband's retirement was involuntary based on the factors set forth in Pimm.