POLEN, J.
Appellant, Kevin Walters (“Former Husband”), appeals the trial court’s final orders on his petition for modification of alimony and adjudging him in contempt of court. Former Husband appealed on six points: retroactive modification of alimony; amount of alimony in consideration of his net income; the trial court’s refusal to consider Linda Walters’ (“Former Wife”) current needs; clarification of the trial court’s temporary modification; the trial court’s failure to consider Former Husband’s health care payments for the parties’ children; and the trial court’s finding that Former Husband divested funds. We affirm as to the first two points on appeal and reverse and remand on the remainder of the points for the reasons set forth herein.
The Walters were married for approximately fourteen years, at which point they dissolved their marriage, citing that it was irretrievably broken. The couple have four children together, one of whom reached the age of majority by the time this appeal was filed, and another whom has now reached the age of majority.
Former Wife worked in hospitality at the beginning of the marriage, until she decided to focus on being a wife and mother while working part-time jobs and volunteering. Former Husband worked as the Vice President of Food and Beverages at The Breakers Hotel. The court calculated Former Husband’s annual base salary at $225,000.00 per year. Former Husband was also entitled to two different bonuses, which are estimated to equal approximately $300,000.00 per year on average. Therefore, the trial court found that Former Husband’s annual income was around $525,000.00. The court imputed Former Wife’s annual gross income at $31,000.00, anticipating that she would return to her previous salary of $51,300.00 within a few years.
The court awarded permanent periodic alimony to Former Wife, ordering payments of $5,625.00 per month, plus $60,000.00 on December 1 of each year, to be taken from Former Husband’s bonus. However, Former Husband’s income was decreased when the economy took a downturn. In 2008, Former Husband was able to pay the $60,000.00 alimony out of his bonus, but in 2009, his income was almost $100,000.00 less than what it was the year before. Despite this decrease, Former Husband still paid the total amount he was required to pay. In 2010, Former Husband’s position at The Breakers Hotel ceased to exist. At this point, while Former Husband was given a one-time severance payment and a bonus, that bonus was $54,000.00, making it impossible for For *975 mer Husband to pay $60,000.00. Instead, Former Husband paid Former Wife twenty percent of his bonus.
Upon hearing that his position was eliminated, Former Husband began to look for new jobs immediately. Former Husband looked for positions comparable to his job at The Breakers and attempted to do some consultation work to maintain an income. For one consulting job, Former Husband made $24,500.00, but was unable to secure any other work. Former Husband also started a company that bought and sold vintage luxury items for a profit. Even though Former Husband’s income substantially declined, he continued to pay the $5,625.00 per month in alimony and $1,520.00 per month in child support, as well as twenty percent of his bonus.
Former Husband filed a petition for modification of the final judgment of dissolution of marriage. In the petition, Former Husband sought a downward modification to be applied retroactively to the date he filed the petition, as well as a reduction or abatement of his obligations. Former Husband also requested a credit for any payments made after the petition was filed in excess of the modified amount(s). In response, Former Wife filed a motion for contempt and enforcement, alleging that Former Husband willfully and intentionally failed to pay the Former Wife the $60,000.00 payment which was due to her on December 1, 2010. The parties were ordered to mediation, which resulted in an impasse. A non-jury trial was held.
At the trial, the court informed Former Husband that his delay in notice for trial made it so the court would not retroactively apply any downward modifications to the time the petition was filed. Additionally, the court did not allow testimony as to the Former Wife’s current needs and allowed statements only about the status of the home. The court reasoned that Former Wife’s needs were already assessed at the time of final judgment and did not need to be reassessed at the time of the modification hearing. When Former Wife was asked about her new car and the costs associated therewith, the objection to discussing her needs was renewed and the trial court sustained the objection.
Following the trial, the court entered final judgment on Former Husband’s petition for modification and on Former Wife’s motion for contempt and enforcement. In the final judgment, the court expressed its concern that Former Husband made the
unilateral decision not to pay the Former Wife the full amount of alimony due, when at the time it was due he had over $60,000.00 in a Wachovia High Performance Money Market account. According to the Former Husband’s Financial Affidavit filed on December 22, 2010 he had cash available to him of $73,000.00, a retirement account worth $305,000.00 and he was earning $29,041.66 a month. He clearly had the ability to pay the $60,000.00 alimony payment to the Former Wife.
The court also expressed concerns with Former Husband’s expenditures related to his vintage business.
Ultimately, the court ordered a temporary suspension of the $60,000.00 alimony payment while monthly alimony in the amount of $5,625.00 was to continue. The trial court also denied Former Husband’s request for retroactive modification of the $60,000.00 alimony payment and child support back payments. This appeal followed.
A trial court’s order on modification of alimony is reviewed by the appellate court for an abuse of discretion. Roberts v. Roberts, 21 So.3d 888, 889 (Fla. 4th *976 DCA 2009) (citing Cleary v. Cleary, 872 So.2d 299 308-04 (Fla. 2d DCA 2004)).

Retroactive Modification

Former Husband argues that the trial court erred in its determination that his notice to set cause for trial was unduly delayed, which resulted in the trial court’s denial of the request for retroactive modification.
Retroactivity is the rule rather than the exception which guides the trial court’s application of discretion when modification of alimony or child support is granted. However, it is within the trial court’s discretion to determine whether to make the modification retroactive, and we find no abuse of discretion on this record.
DeSantis v. Smith, 634 So.2d 796, 797 (Fla. 4th DCA 1994). “[A]n award of retroactive alimony must be based on the receiving spouse’s need for alimony and the paying spouse’s ability to pay.” Valentine v. Van Sickle, 42 So.3d 267, 274 (Fla. 2d DCA 2010). In Alpert v. Alpert, 886 So.2d 999 (Fla. 2d DCA 2004), the appellate court reversed as to the award of retroactive alimony because the record did not support the findings that the husband had the ability to pay the amount awarded. Id. at 1002.
This case is distinguished from Alpert where the trial court was unable to determine the sources and amount of the former husband’s income during the time period in question. Id. Here, the trial court found that Former Husband’s gross bonus from November 2010 was $78,245.00, with a net amount of $54,088.00. Additionally, Former Husband received $22,000.00 in November and December for consulting work. The court found that Former Husband’s gross income for the 2010 year was $333,039.00, including a gross bonus that was more than the $60,000.00. The annual amount of alimony owed to Former Wife was $127,500.00, which was just over one-third of Former Husband’s total gross income of $311,039.00 from his former employer. Accordingly, the trial court found that Former Husband was able to pay the full alimony owed to Former Wife for the 2010 year.
The trial court also found that the Former Husband made a unilateral decision not to pay the Former Wife the full amount of alimony due, despite several financial accounts that held ample funds to make the payment. Under this court’s holding in Siegel v. Siegel, 700 So.2d 414 (Fla. 4th DCA 1997), a court has the authority to look at all the assets from which an alimony amount may be obtained to determine if the former spouse had the ability to pay. Id. at 415. In this case, the trial court looked at all of Former Husband’s assets and determined that he was more than able to make the $60,000.00 payment on December 1, 2010. The trial court was well within its discretion to do so and, therefore, properly determined that Former Husband had the ability to pay his court-ordered amount of alimony to Former Wife at the end of 2010.
 Additionally, it is not an abuse of discretion for the trial court to hold that a payor is in contempt for failing to pay the amount of court-ordered alimony to a payee. See Haymon v. Haymon, 640 So.2d 1204, 1205 (Fla. 2d DCA 1994). If the final judgment orders a particular amount to be paid, it is the responsibility of the person who is obligated to make that payment to seek suspension or termination of the alimony at the time he or she is unable to make payments. See id. Former Husband petitioned the court for a modification on November 30, 2010 and then made a payment that was less than the payment ordered in the final judgment on December 1, 2010. Without the court’s permis *977 sion to pay less than the ordered amount, the trial court correctly determined Former Husband was in contempt. See id.

Amount of Alimony

Next, Former Husband argues that the trial court awarded Former Wife sixty-four percent of his net income because the court focused solely on his gross income of $333,089.00 in determining the amount of alimony.
In Decker this court held that:
Although each award of alimony and child support, standing alone, may not be objectionable, it is the cumulative effect of these awards which makes the trial court’s judgment an abuse of discretion. As was noted in the similar case of Blum v. Blum, 382 So.2d 52 (Fla. 3d DCA 1980), compliance with the final judgment will leave the appellant destitute and unable to provide even the most basic living expenses. This court has stated that an award to a wife should permit her to retain some semblance of her former life style “while at the same time ensuring that the husband is not strapped so that his incentive to strive forward and his lust for life are seriously impaired.”
Decker v. Decker, 660 So.2d 1162, 1164 (Fla. 4th DCA 1995) (quoting Gentile v. Gentile, 565 So.2d 820, 822 (Fla. 4th DCA 1990)).
Based on Former Husband’s receipt of severance, a bonus, and money for consulting work, the trial court found that he was able to pay the full alimony owed to Former Wife for the 2010 year. In making his arguments on appeal, Former Husband does not include his additional assets in his calculations. This court has held that varying percentages — typically over fifty percent — of net income for alimony may be excessive, but the key in each of these cases has always been the payor’s ability to survive economically, despite the payment to the payee. See Decker, 660 So.2d at 1164; Thomas v. Thomas, 418 So.2d 316, 317 (Fla. 4th DCA 1982). In Decker, the former husband was left with just over $14,000.00 of his $75,000.00 net income after paying alimony and child support to his former wife. Decker, 660 So.2d at 1164. This court found that this was “glaring and unfair” and that the former husband would be adversely affected by the amount of money he had left for himself. Id.
This case is distinguished because Former Husband had more than just his income from the Breakers; he also had assets that the trial court was able to consider in determining the proper amount of alimony. See Siegel, 700 So.2d at 415. In considering these assets, the trial court was well within its discretion. Accordingly, we hold that the trial court did not abuse its discretion in ordering Former Husband to pay the amount of alimony previously ordered when Former Husband had received severance pay and a bonus, and retained several different money accounts otherwise.

Consideration of Former Wife’s Current Needs

Next, Former Husband argues that the trial court must have reassessed Former Wife’s needs upon the filing of his petition for modification of alimony. The trial court stated at the hearing on Former Husband’s petition for modification that Former Wife’s needs were already established at the time of dissolution of marriage and need not be reestablished for purposes of modification of alimony.
Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties. The two primary elements to *978 be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds.
Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla.1980). “Current necessary support rather than the accumulation of capital is the purpose of permanent periodic alimony.” Mallard v. Mallard, 771 So.2d 1138,1140 (Fla.2000). When considering a modification to alimony, “the recipient’s need [is] controlling and that to hold otherwise would grant the recipient a continuing interest in the former spouse’s good fortune.” Bedell v. Bedell, 583 So.2d 1005, 1007 (Fla.1991).
Here, the trial court failed to reconsider Former Wife’s needs at the time Former Husband’s income substantially changed. The Third District Court of Appeal, in Lopez v. Lopez, 970 So.2d 388 (Fla. 3d DCA 2007), held that a trial court should consider the needs of the recipient of alimony when ruling on a petition requesting downward departure. Id. at 392 n. 2 (citing Pimm v. Pimm, 601 So.2d 534 (Fla.1992)). Following the instruction provided in Bedell and Lopez, public policy suggests that it is unjust to allow a former spouse to continue receiving the same amount from the payor if substantial changes have occurred and the payee’s needs are not the same as their needs at the time of trial. While the trial court was correct to modify the Former Husband’s alimony obligation, the amount of such modification must be based on both his diminution in income, and Former Wife’s current needs.
As such, we hold that the trial court abused its discretion when it failed to reassess Former Wife’s needs at the time Former Husband proved that his income had substantially changed. We reverse as to this issue and remand with a direction to the trial court that it should consider both Former Husband’s change in circumstances and Former Wife’s needs from the time the petition for modification was filed.

Temporary Modification Suspending Payment

Former Husband next argues that the trial court’s ruling temporarily suspending the $60,000.00 payment due on December 1, 2010 lacked specificity in its terms. Therefore, Former Husband was not given sufficient notice of the requirements in order to comply.
In Kranis v. Kranis, 313 So.2d 135 (Fla. 3d DCA 1975), the Third District Court of Appeal explains that
[A] party should not be held to be in contempt for violation of an order, or provision of a judgment, which is not clear and definite, so as to make the party aware of its command and direction, as applied to a given circumstance upon which such party is called upon to act, or refuse to act.
Id. at 139. Kranis further explained that a trial court’s order should be specific in its commands so the parties would know what is required of them in order to comply.
Former Husband contends that the final judgment was unclear as to the end of the suspension. Former Husband requested a significant reduction to the alimony payment from the 2010 bonus, and elimination of any and all future alimony payments from bonuses, as they have been eliminated. The language of the final judgment is that the $60,000.00 payment due December 1, 2011 is temporarily suspended. While the final judgment made it clear that the $60,000.00 payment is, at least, currently suspended for a temporary period of time, it did not specifically delineate the confines of that suspension. Accordingly, we also reverse as to this issue and remand for clarification.

*979
Consideration of Health Insurance Payments

In his next point on appeal, Former Husband argues that the trial court erred by not considering the amounts he paid in health insurance for his children as child support. It is undisputed that Former Husband did not receive a $475 credit toward his child support obligation, pursuant to section 61.30(8), Florida Statutes. The trial court denied Former Husband’s request to credit him for retroactive child support payments.
Section 61.30(8), Florida Statutes, states that
Health insurance costs resulting from coverage ordered pursuant to s. 61.13(l)(b), and any noncovered medical, dental, and prescription medication expenses of the child, shall be added to the basic obligation unless these expenses have been ordered to be separately paid on a percentage basis. After the health insurance costs are added to the basic obligation, any moneys prepaid by a parent for health-related costs for the child or children of this action shall be deducted from that parent’s child support obligation for that child or those children.
§ 61.30(8), Fla. Stat. (2011).
In Willey v. Willey, 703 So.2d 1234 (Fla. 4th DCA 1998), this court cited to section 61.30(8), Florida Statutes, and reversed an order modifying child support because of the failure “to deduct the father’s payment of the child’s health insurance from his child support obligation.” Id. at 1234. Section 61.30(8) provides that “any noncovered medical, dental, and prescription medication expenses of the child, shall be added to the basic obligation.” § 61.30(8), Fla. Stat. (2011) (emphasis added). Failure to deduct those amounts from the child support order is erroneous and an order that does not reflect the application of those amounts to the child support payment should be reversed. See Willey, 703 So.2d at 1234.
Here, Former Husband sought to have the child support amount revisited because of his undisputed payment of $475 per month for the children’s health insurance. Failure to deduct that amount from Former Husband’s overall child support payment is contrary to the Florida Statutes. Therefore, we reverse and remand for a re-calculation of child support.

Divestment of Funds

Lastly, Former Husband argues that the trial court erred in its finding that he divested all his funds when he purchased vintage automobiles for his new business. Former Husband contends that he did not divest his funds and, rather, converted them into valuable vintage vehicles to be repaired and resold for profit.
Divestment is “[t]he complete or partial loss of an interest in an asset.” Black’s Law DictionaRY 512 (8th ed. 2004). The Fifth District held in Laliberte v. Laliberte, 698 So.2d 1291 (Fla. 5th DCA 1997), that it is improper to punish a former husband for an economic downturn he had no control over and which did not occur so he could avoid paying his court-ordered payments. Id. at 1293. The true question is whether the former husband, in good faith, attempted to obtain employment that would enable him to continue meeting his court-ordered financial obligations. See id.
Here, there is no evidence that Former Husband “divested” his funds that should have been used for alimony and child support, thereby completely or partially losing those funds. Instead, he converted those funds to begin his own business in order to obtain an income to continue to support his family. Thus, we hold the trial court improperly found that Former Husband divested his funds where he invested money *980 into a business in hopes of obtaining a sizeable income to maintain his alimony and child support payments.
We hold that the trial court correctly denied retroactive modification of alimony and determined that alimony should be reduced in consideration of Former Husband’s net income. However, we hold the trial court abused its discretion when it refused to consider Former Wife’s current needs, failed to consider Former Husband’s health care payments for the parties’ children, and found that Former Husband divested funds. We further hold that the trial court’s temporary modification was unclear and requires clarification of the terms of suspension. As a result, we affirm in part, and reverse and remand in part for further proceedings consistent with this opinion.

Affirmed in part; Reversed and Remanded in part.

GROSS, J., and BLOOM, BETH F„ Associate Judge, concur.